[18028. In Bank.—June 9, 1893.]

## IN THE MATTER OF THE ESTATE OF WILLIAM B. JOHNSON, DECEASED.

ADOPTION—COMMON LAW—STATUTORY RIGHT.—The right of one person legally to adopt the child of another was unknown to the common law, and exists in this state as a pure creation of statute law.

ID.—SUBSTANTIAL COMPLIANCE WITH STATUTE.—In order to effect such adoption, there must be a substantial compliance with all of the essential requirements of the law under which the right is claimed.

ID.—STATUTORY CONSTRUCTION—MANDATORY AND DIRECTORY PROVISIONS.—In determining what provisions of the law regulating adoption are essential and therefore mandatory, the statute is to receive a sensible construction, and its intent is to be ascertained not from the literal meaning of any particular word

or single section, but from a consideration of the entire scope, spirit, and purpose of the statute; and unless a fair consideration of the statute, directing the mode of proceeding of the judge as a public officer in the matter of the adoption, shows that the legislature intended compliance with the provision in relation thereto to be essential to the validity of the proceeding, it is to be regarded as directory merely.

ID.—EXAMINATION OF CHILD UNDER AGE OF CONSENT—DIRECTORY PROVISION—VALIDITY OF PROCEEDING.—Construing together all the sections of the Civil Code relating to adoption, including the section which makes the consent of a child over the age of twelve years necessary to its adoption, and looking at the substantial object which the statute has in view in requiring the judge to examine all of the parties before him for the purpose of entering into the contract of adoption, the examination of a child under the age of consent cannot be deemed mandatory or indispensable to the validity of the adoption proceeding; but the provision for the examination of the parties, so far as applicable to such child, is simply directory, and is to be complied with or not in the discretion of the judge; and the proceeding, if regular in other respects and acquiesced in by all the parties to it, is not void, and cannot be collaterally assailed by a stranger to the proceeding.

ID.—ADOPTION NOT A JUDICIAL PROCEEDING—CONTRACT—VALIDITY.—The adoption of a child is not a judicial proceeding, though the sanction of a judicial officer is required for its consummation, but the proceeding is one of contract between the parties of a very solemn nature, to be entered into in the presence of the judge; and the essential foundation of the proceeding is the consent of the person named in the statute, and when this has been given in the presence of the proper judge and manifested in writing, and by the order of such judge, the contract cannot be declared invalid because of some merely technical objection to the manner in which the judge who signed the order of adoption may have discharged his duty in the premises.

ID.—SIGNED PAPERS PRESENTED TO JUDGE—FINDING AGAINST EVIDENCE.—A finding that an agreement to adopt a child and the consent of her father thereto were not signed or acknowledged before the judge who signed the order of adoption, is contrary to the evidence where it appears that the papers were actually signed by the parties and presented to the judge at the time he made his order thereon, and it is immaterial that they were signed before such presentation, the substantial thing required by the statute being that the parties whose consent is required do consent in the presence of the judge, and that such consent is manifested by writings then delivered by them for that purpose.

CONSTRUCTION OF DECISIONS—MAXIM.—It is a maxim never to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing to revoke letters of administration and denying an application for such letters.

The facts are stated in the opinion of the court.

*Baldwin & Campbell,* and *Pillsbury, Blanding & Hayne,* for Appellant.

Adoption proceedings under the code must be liberally construed. (*In re Jessup,* 81 Cal. 419; Civ. Code, sec. 4; *Bancroft*

v. *Bancroft*, 53 Vt. 12; *Winans* v. *Luppie*, 47 N. J. Eq. 304; *Abney* v. *De Loach*, 84 Ala. 393.) It was a matter for the judge to determine whether the child should be examined or not, and his determination cannot be collaterally attacked. (*Magee* v. *Supervisors*, 10 Cal. 376; *Berryman* v. *Perkins*, 55 Cal. 484; *Ligare* v. *California etc. R. R. Co.*, 76 Cal. 613.) If there was any failure; to examine the child, it was at all events error for which the order cannot be collaterally attacked. (*Abney* v. *De Loach*, 84 Ala. 402; 1 Cent. Law J. 67; *In re Stevens*, 83 Cal. 332; 17 Am. St. Rep. 252; *Waugh* v. *Chauncey*, 13 Cal. 11.) The order establishes a personal *status*. (*In re Newman*, 75 Cal. 213; 7 Am. St. Rep. 146; *Ross* v. *Ross*, 129 Mass. 246; 37 Am. Rep. 321; *Humphries* v. *Davis*, 100 Ind. 278; 50 Am. Rep. 788; *Power* v. *Hafley*, 85 Ky. 674.) Proceedings establishing a pers nal *status* cannot be collaterally attacked. (*Brown* v. *Brown*,' 101 Ind. 342, 343; *Starke* v. *Chesapeake Co.*, 7 Cranch, 420; *Dodge* v. *Cole*, 97 Ill. 351; 37 Am. Rep. 111; *In re Bush*, 47 Kan. 264; *Warner* v. *Wilson*, 4 Cal. 310; *Barnard* v. *Barnard*, 119 Ill. 98; *Gallup* v. *Smith*, 59 Conn. 354; *Appeal of Wolf*, 13 Atl. Rep. 764; *Pittsford* v. *Chittenden*, 58 Vt. 53; *Succession of Arlaud*, 42 La. An. 548; *Gronfier* v. *Puymirol*, 19 Cal. 629; *Shumard* v. *Phillips*, 53 Ark. 42, 43; *Simmons* v. *Saul*, 138 U. S. 452; *Comstock* v. *Crawford*, 3 Wall. 402, 403.) The collateral kindred have no standing to attack the order. (*Appeal of Wolf*, 13 Atl. Rep. 764, 765; Freeman on Judgments, sec. 512; *Brinster* v. *Compton*, 58 Ala. 299; *Whitney* v. *Kelley*, 94 Cal. 146.)

*James H. Budd, John E. Budd, Nutter & De Vries*, and *Wesley Minta*, for Respondents.

The right claimed here is a purely statutory right arising under the claimed performance of statutory rules or conditions. (*Ex parte Clark*, 87 Cal. 640; *In re Stevens*, 83 Cal. 322; 17 Am. St. Rep. 252.) In all cases where mere statutory rights are created, or purely statutory remedies are provided, the statute must be strictly followed. (*Young* v. *Wright*, 52 Cal. 407; *Judah* v. *Fredericks*, 57 Cal. 389; *Estate of Jessup*, 81 Cal. 419; *Furgeson* v. *Jones*, 17 Or. 204; 11 Am. St. Rep. 814;

*Tyler* v. *Reynolds*, 53 Iowa, 146; *Shearer* v. *Weaver*, 56 Iowa, 578; *Keegan* v. *Geraghty*, 101 Ill. 26, 39; *In re Moore*, 14 R. I. 38; *Cohen* v. *Barrett*, 5 Cal. 210; *Myer* v. *Kohlman*, 8 Cal. 47; *Jordon* v. *Giblin*, 12 Cal. 103; *Gilmer* v. *Lime Point*, 19 Cal. 60; *Saunders* v. *Haynes*, 13 Cal. 150; *Whitney* v. *Delegates*, 14 Cal. 479. See also *McMinn* v. *Whelan*, 27 Cal. 314; *McDonald* v. *Katz*, 31 Cal. 167; *Central Pacific R. R. Co.* v. *Pearson*, 35 Cal. 257; *Iburg* v. *Fitch*, 57 Cal. 192; *Mulligan* v. *Smith*, 59 Cal. 231; *Thatcher* v. *Powell*, 6 Wheat. 127; *Freeman* v. *Strong*, 6 Dana, 282; 32 Am. Dec. 70; *Rachel* v. *Emerson*, 6 Mon. B. 280; *Small* v. *Small*, 2 Bush, 46; *Mendall* v. *Rickets*, 6 Marsh. J. J. 592; *Morse* v. *Presby*, 5 Fost. [N. H.] 502; *Sanborn* v. *Bellows*, 22 N. H. 473; *Curlton* v. *Washington Ins. Co.*, 35 N. H. 166; *Striker* v. *Kelly*, 7 Hill, 25; *Denning* v. *Corwin*, 11 Wend. 647; *Smith* v. *Fowle*, 12 Wend. 9; *Enburg* v. *Conner*, 3 N. Y. 511; 53 Am. Dec. 325; *Gunn* v. *Howell*, 27 Ala. 675; *Foster* v. *Glazener*, 27 Ala. 396; *Earthman* v. *Jones*, 2 Yerg. 492; *Barry* v. *Patterson*, 3 Humph. 314; *Northcutt* v. *Lemery*, 8 Or. 322; *Smith* v. *Rice*, 11 Mass. 506; *Cook* v. *Darling*, 18 Pick. 393; *Sears* v. *Terry*, 26 Conn. 285; *Pulaski* v. *Stuart*, 28 Gratt. 880; *Long* v. *Hewitt*, 44 Iowa, 365; *Ex parte Clark*, 87 Cal. 640; *Ex parte Chambers*, 80 Cal. 219; *Windsor* v. *McVeigh*, 93 U. S. 274; *Cowell* v. *Martin*, 43 Cal. 614.) In interpreting the laws, if the provisions are plain, the courts must follow them and must look for the meaning of the act to its language, and cannot reject or treat any part thereof as useless. (*City of Eureka* v. *Diaz*, 89 Cal. 467; *In re Jessup*, 81 Cal. 419; Sutherland on Stat. Int., 237; Endlich on Stat. Int., 7–25.) Adoption is a ceremony in which the mode is the measure of the power. (*In re Chambers*, 80 Cal. 219; *Cowell* v. *Martin*, 43 Cal. 614.) The requirement as to the signing of the consent to the adoption was not fulfilled. (*Crispin* v. *Jones*, 3 Serg. & R. 157; *Peck* v. *Cary*, 27 N. Y. 9; 84 Am. Dec. 238; *Compton* v. *Motton*, 12 N. J. L. 70; *Combs* v. *Jolly*, 3 N. J. Eq. 625; *Nickle* v. *Matlack*, 17 N. J. L. 86; *Ragland* v. *Huntingdon*, 1 Ired. 561; *Graham* v. *Graham*, 10 Ired. 216; *In re Cox's Will*, 1 Jones, 321; *Downie's Will*, 42 Wis. 74; *Reid* v. *Watson*, 27 Ind. 442; *Estate of Toomes*, 54 Cal. 509; 35 Am. Dec. 83; *Baker* v. *Eberhart*, 65

Cal. 27; *Playne* v. *Scriven*, 1 Rob. Ecc. 772; *Charlton* v. *Hind-march*, 1 Swab. & T. 433; *Chase* v. *Kittredge*, 87 Am. Dec. 687; *Commonw* v. *Crommie*, 8 Watts & S. 339; *Case of Taylor*, 1 Browne [Pa.] 73, appen.; *Welorn* v. *Little*, 1 Nott & McC. 263.)

DE HAVEN, J.— Appeal from an order of the superior court denying the petition of Mary Eliza Johnson Howell for the revocation of letters of administration issued to one Eugene W. Kay upon the estate of William B. Johnson, deceased, and for her appointment as administratrix of said estate. The proceeding was commenced under section 1383 of the Code of Civil Procedure.

The petitioner claims to be the legally adopted child of the deceased, and whether she is or not is the only question presented by this appeal.

It appears from the evidence that on July 8, 1874, the petitioner was a motherless child five years of age, and the daughter of David G. Strahan; and on that day the deceased, William B. Johnson, then an unmarried man, the petitioner and her father, all residents of the county of San Joaquin, appeared before the Hon. W. S. Buckley, county judge of that county, and an order was made by said judge declaring the petitioner adopted by the said deceased, and that she should be regarded and treated in all respects as his child, and should take his family name. The order, as shown by its recitals, was based upon a petition therefor signed by the deceased, accompanied by the written consent of the father of the petitioner herein to such adoption, and an agreement executed by the deceased to the father to the effect that the petitioner here should be adopted as the child of the deceased and treated in all respects as if she were his own lawful child. The order further sets forth that all parties to the proceeding were " present before the county judge of said county of San Joaquin in open court," and " were then and there (save and except said child) duly sworn and examined separately in relation thereto," and that it appeared "that the interest of said minor would be promoted by such adoption."

The petitioner lived with the deceased as his child from the

date of the proceeding for her adoption until her marriage in April, 1889. The adoptive father had no other children, and died in January, 1891, intestate. The natural father of petitioner is also dead.

Upon the foregoing evidence, which is undisputed, the superior court found that the adoption papers were not signed or acknowledged before the county judge of San Joaquin County, and that the child Mary Eliza Strahan, the petitioner here, was never examined before the county judge, and, as a conclusion of law, held that the adoption proceedings were and are invalid.

1. The respondent claims that the appellant was never legally adopted by the deceased because she was not examined by the county judge at the time the order of adoption was made, as required by section 227 of the Civil Code, then and now in force, and this is the main question to be decided by us. The right of one person to legally adopt the offspring of another, and thus to create between the person adopting and the child adopted the relation of parent and child, giving to the child all the rights and subjecting it to all the duties of that relation, was unknown to the common law, and exists in this state as a pure creation of statute law; and, in order to effect such adoption, it is necessary that there should be a substantial compliance with all of the essential requirements of the law under which the right is claimed; but, in determining what provisions of the law are essential and therefore mandatory, the statute is to receive a sensible construction, and its intention is to be ascertained, not from the literal meaning of any particular word or single section, but from a consideration of the entire statute, its spirit and purpose. In the case of *Rutledge* v. *Crawford*, 91 Cal. 533, this court said that "it is one of the great maxims of interpretation to keep always in view the general scope, object, and purpose of the law rather than the mere letter. 'He who considers merely the letter of an instrument goes but skin deep into its meaning.'" (Broome's Legal Maxims, 611.) In order to properly apply this rule of construction in the present case it is necessary to read section 227 of the Civil Code with other sections of the same code relating to the subject of adoption. Those sections are:—

Sec. 222. "The person adopting a child must be at least ten years older than the person adopted."

Sec. 223. "A married man not lawfully separated from his wife cannot adopt a child without the consent of his wife; nor can a married woman not thus separated from her husband, without his consent, provided the husband or wife not consenting is capable of giving such consent."

Sec. 224. "A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, except that consent is not necessary from a father or mother deprived of civil rights . . . . or who has been judicially deprived of the custody of the child on account of cruelty or neglect."

Sec. 225. "The consent of a child, if over the age of twelve years, is necessary to its adoption."

Sec. 226. (As it read in 1874.) "The person adopting a child, and the child adopted, and the other persons whose consent is necessary, must appear before the county judge of the county where the person adopting resides, and the necessary consent must thereupon be signed, and an agreement be executed by the person adopting to the effect that the child shall be educated and treated in all respects as his own lawful child should be treated."

Then follows section 227, upon which the respondent places special reliance, and which provides: —

"The judge must examine all persons appearing before him pursuant to the last section, each separately, and if satisfied that the interests of the child will be promoted by the adoption, he must make an order declaring that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting."

The language of this section, if literally construed, is broad enough to require the examination of an infant incapable of consenting to the proceeding, or of giving to the judge any information which could aid him in determining whether to give or withhold his consent to the adoption; and the contention of respondent on this point is that the section is mandatory, and must receive this literal construction, and that without the examination of such an infant the proceeding for its adop-

tion, although regular in every other respect and acquiesced in by all of the parties to it, is void and may be collaterally assailed by a stranger to the proceeding. We are unable to accept this as a correct interpretation of the statute. The adoption of a child under the section of the Civil Code above cited is not a judicial proceeding (*In re Stevens*, 83 Cal. 322), although the sanction of a judicial officer is required for its consummation. The proceeding is essentially one of contract between the parties whose consent is required. It is a contract of a very solemn nature, and for this reason the law has wisely thrown around its creation certain safeguards, by requiring, not only that it shall be entered into in the presence of a judge, but also that it shall receive his sanction, which is not to be given until he has satisfied himself of these three things: 1. That the person adopting is ten years older than the child. 2. That all the parties whose consent is required do consent, fully and freely, to the making of such contract. 3. That the adoption contemplated by the contract will be for the best interest of the child adopted.

It is apparent that the only object of section 227 of the Civil Code in directing the judge to examine the parties who are required to appear before him, is that he may satisfy himself in relation to the facts just mentioned, and the subject of the examination is to be confined to these three matters; and in order that he may thus satisfy himself that a child over the age of twelve years, or a wife whose consent is necessary, do freely consent to the adoption, the judge is required to examine the parties separately; but the examination of a child whose consent to the contract is unnecessary, and who is of such tender years that it is incapable of exercising any judgment as to the effect of such contract upon its interests, would certainly be an idle thing to do, and the section should not receive such an extremely narrow and literal construction as to make the examination of such a child mandatory, and its omission fatal to the creation of a valid contract binding upon adults who have done everything required of them in order to manifest their full and free consent to such adoption. The provision in relation to the separate examination of the parties to such contract, most certainly in so far as it is applicable to a child under the age of

consent, is simply directory, and is to be complied with or not in the discretion of the judge. "Unless a fair consideration of a statute directing the mode of proceeding of public officers shows that the legislature intended compliance with the provision in relation thereto to be essential to the validity of the proceeding, it is to be regarded as directory merely. Thus, directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and, if the act is performed, but not in the time or in the precise mode intended, it will still be sufficient, if that which is done accomplishes the substantial purposes of the statute." (Sutherland on Statutory Construction, p. 575; *Jones* v. *State*, 1 Kan. 273; *People* v. *Supervisors*, 34 N. Y. 272.) In this latter case the court said: "A strict and literal adherence to the letter and form of a statute in minor or non-essential particulars will often defeat a remedy or destroy a right which it was the principal intention of the legislature to create or provide. Where the statute directs an act to be done in a certain way, or at a certain time, and a strict compliance as to time or form does not appear to the judicial mind to be essential, the proceedings are held valid, though the command of the statute has been disregarded."

Keeping in view the foregoing rule for determining whether the provisions of a statute relating to the mode of proceeding by a public officer are mandatory or only directory, and looking at the substantial object of the statute in requiring the judge to examine the parties appearing before him for the purpose of entering into the contract of adoption, it is clear to us that the examination of a child under the age of consent should not be deemed indispensable to the validity of the adoption proceeding.

The cases of *Long* v. *Hewitt*, 44 Iowa, 363; *Tyler* v. *Reynolds*, 53 Iowa, 146; *Shearer* v. *Weaver*, 56 Iowa, 578; *Furguson* v. *Jones*, 17 Or. 204; 11 Am. St. Rep. 808; *Ex parte Chambers*, 80 Cal. 219, and *Ex parte Clark*, 87 Cal. 640, cited by respondent, are neither of them in conflict with the views here expressed, as an examination of those cases will show. In Iowa,

the statute requires that the act of adoption shall be evidenced by an instrument in writing, signed by the parents or others named, and provides that " upon the execution, the acknowledgment and filing for record of such instrument, the rights, duties, and relations between the parent and child by adoption shall thereafter . . . . be the same as exist by law between the parent and child by lawful birth," and it was held in each of the above-cited cases from the supreme court of that state, that until the instrument was filed for record, its execution was not complete; that the filing for record was in the nature of a delivery, and was necessary in order to give validity to the instrument.   Thus, in *Tyler* v. *Reynolds*, 53 Iowa, 146, the court said :  " The statutory conditions and terms are that the written instrument must be executed, signed, acknowledged, and filed for record.   When this is done the act is complete.   If the named requisites are not done, then the act is not complete, and the child cannot inherit from the parent by adoption."   This is the ground upon which all the above-cited cases from the supreme court of Iowa were decided, and it will thus be seen that they are all based upon the sound legal principle that until the parties whose consent is necessary to the formation of a contract have performed every act which the statute requires of them in order to manifest such consent, the contract is not complete.

In Oregon adoption is a judicial proceeding, and under the statute of that state, in order to give the court jurisdiction to proceed, the natural parents must be served with notice, or must consent to the decree, and in *Furguson* v. *Jones*, 17 Or. 204; 11 Am. St. Rep. 808, the only matter decided was that a decree of adoption without notice to the natural parent, and without his consent, was void for want of jurisdiction in the court rendering the decree.   The distinction between that case and this is most obvious.   In this state, as we have seen, adoption is simply a matter of contract, and in the case before us all of the parties whose consent was necessary to the formation of such contract entered into the same freely and voluntarily and with the sanction of the proper officer.

In *Ex parte Chambers*, 80 Cal. 216, involving the right to the custody of a child, it appeared that the order for its adoption was made without the consent of the managers of the orphan

asylum having the care of the child, and such consent was required by the statute under which the adoption proceeding was had. The court held the adoption invalid because of the failure to comply with this essential requirement of the law, and it was with reference to this omission that the court used the general language relied upon by the respondent here, saying: "The power to adopt minor children is a creation of the statute unknown to the common law, and the mode must be held to be the measure of the power." The court simply meant by this expression that the statute having made the consent of certain parties necessary, there could be no valid adoption without such consent.

In *Ex parte Clark*, 87 Cal. 638, the natural mother was seeking to obtain the custody of her child from John D. Reulin and his wife, who claimed to be the adopted parents of the child, and the case was submitted to the court upon the record of the adoption proceedings alone, and the court in its opinion, speaking of this record, said: "It will be observed that the parents consented to the adoption of their child by *Jacob* Reulin; that the agreement to adopt is signed by *David* Reulin, and that the order of the court gives the child to *Jacob* Reulin. There is nothing in the record of the proceeding to show that the names Jacob Reulin, David and John D. Reulin indicate one and the same person." And upon this record, which did not show that the parents of the child had ever consented to its adoption by *John D.* Reulin, or that he had ever agreed to adopt the child, or that the judge had ever made an order declaring the child adopted by him, the court held that the natural mother was entitled to the custody of the child, saying: "In our opinion the order is void, and affords respondents no warrant for the detention of the child. It confers no rights upon them, and is manifestly too uncertain when read in connection with the agreements and consents upon which it was based, to render any one liable as the parent by adoption, especially one whose name does not appear in the record at all." And this was all that was decided in that case, and was the only question before the court. It is true that it was also said in the opinion in that case by way of argument: "The child by adoption cannot inherit from the adopting parent, unless the act of adoption has been done in strict accordance with the

statute. No matter how persuasive may be the equities of the child's case, or how clear the intention of all parties, it must appear that the statutory conditions have been strictly performed, otherwise the relation never existed, and the right to inherit never was acquired. . . . . It cannot be said that one condition is more important than another." But it is evident that the court, in saying that one condition or provision of the statute concerning adoption was no more important than another, was speaking of essential conditions, such as under a proper construction of the statute are mandatory, as the case then under consideration was one where there had been a failure to observe essential requirements of the law, the order of adoption not being based upon an agreement signed by the person named in such order as the adopting parent; nor did the record there show any consent upon the part of the natural parents of the child to its adoption by the respondents in that case.

In *Cohens* v. *Virginia*, 6 Wheat. 264, Chief Justice Marshall repeated the rule which it is always necessary to keep in mind when construing the opinion of a court. He said: "It is a maxim never to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." And Lord Manners in *Revell* v. *Hussey*, 2 Ball & B. 286, said upon this same point: "It is always unsatisfactory to abstract altogether the reasoning of the court in any reported case from the facts to which this reasoning is meant to apply; it has a tendency only to misrepresent one judge and to mislead another."

The opinion in *Ex parte Clark*, 87 Cal. 638, when construed and limited as it must be by the facts of that case, is not in conflict with the conclusions here announced, that the statute in relation to adoption must receive a reasonable construction; and that a substantial compliance with its essential provisions is all that is required in order to affect a valid adoption. The essential foundation of the proceeding is the consent of the persons named in the statute, and when this has been given in the presence of the proper judge, and manifested in writing, and by the order of such judge, the contract cannot be declared invalid

because of some merely technical objection to the manner in which the judge who signed the order of adoption may have discharged his duty in the premises.

2. The finding of the court that the agreement of the deceased to adopt the petitioner, and the consent of her father thereto, were not signed or acknowledged before the county judge of San Joaquin County, is not sustained by the evidence. The only basis for this finding seems to be that there was no evidence that the papers were actually signed in the presence of the judge, and that the recitals in the order show that they were signed and filed with the clerk of the court before the parties appeared before the judge. But the evidence does show that the papers were actually signed by the parties, and the court so finds, and they were presented to the judge at the time he made his order thereon. This was sufficient. The substantial thing required by the statute is that the parties whose consent is required do consent in the presence of the judge, and that such consent is manifested by writings signed by them and then delivered by them for that purpose; but the particular point of time when such written consent was signed, that is, whether it was done in the presence of the judge when the order was made, or before coming into his presence for the purpose of obtaining such order, is a matter of no importance whatever.

Judgment and order reversed.

GAROUTTE, J., MCFARLAND, J., and FITZGERALD, J., concurred.

BEATTY, C. J. (concurring). — I concur in the judgment and generally in the opinion of Justice De Haven, but I am not willing to say that the provisions of the statute requiring the judge before whom an adoption proceeding is had to examine the child, even when of tender years, is in no sense mandatory. The provision is designed to safeguard the interests of the child, and it may be that she or one proceeding in her behalf could attack the validity of the order upon the ground that the statute had not been strictly pursued. As to children under twelve years of age, the proceeding is strictly *in invitum*, and to change or abridge their natural rights the prescribed procedure must be strictly followed; but it does not lie in the mouth of a stranger,

or one claiming through an adult and a consenting party to the adoption proceeding, to say that because the interests of the passive and helpless subject of it were not so carefully looked after as they should have been, she must therefore be deprived of the advantages of the order of adoption to which she has always conformed, and the protection of which she invokes.

Harrison, J. (dissenting). — William B. Johnson died intestate in San Joaquin County, January 16, 1891, and on the 13th of February, 1891, letters of administration upon his estate were granted by the superior court of that county to Eugene W. Kay. April 10, 1891, Mary Eliza Johnson Howell, wife of M. D. Howell, filed a petition in said court, alleging that she was the child and sole heir of the decedent, and therefore entitled to letters of administration upon his estate, and praying that the letters theretofore granted to Kay be revoked, and that she be appointed administratrix of said estate. To this petition answers were made by Kay, both as administrator and as one of the next of kin of the deceased, and also by Mollie Settle, a grandniece of the decedent, contesting the application of Mrs. Howell, and denying that she was the child of the deceased, or entitled to any portion of his estate. At the hearing before the superior court the evidence presented was limited to that involving the determination of the issue whether Mrs. Howell was the child of the decedent. The evidence offered by her in support of this averment consisted of certain proceedings taken before the county judge of San Joaquin County July 8, 1874, for the purpose of her adoption by the decedent, under the provisions of the Civil Code. The court held that these proceedings were not in conformity with the provisions of the code, and that the petitioner had not been adopted as a child of the decedent, and therefore was not his heir, and dismissed her petition. From the order denying her application, and the judgment entered thereon, she has appealed to this court.

The question presented for consideration upon the appeal is whether the proceedings for adoption taken before the county judge sufficiently complied with the requirements of the Civil Code to constitute the petitioner the child of the decedent. The point chiefly urged in support of the judgment of the superior

court is that it appears upon the face of the order made by the county judge that he did not make any examination of the child whose adoption was sought, as required by the code before he could make an order sanctioning the adoption, while on the part of the appellant it is contended that under the circumstances of this case no examination of the child was required.

The evidence offered in support of the claim of adoption consisted of:—

1. A petition by Johnson to the county judge setting forth that the child was about five years of age; that the petitioner was desirous of adopting the child, and had made a written agreement to that effect; that the mother of the child was dead.; that its father had given his consent in writing to its adoption by the petitioner, and praying the judge to make an order declaring that the child be adopted and treated by him as his lawful child. To this petition was annexed a request of the father of the child that the county judge would make the order of adoption.

2. An agreement executed by the petitioner to the father that he would adopt and treat the child in all respects as his own lawful child should be treated.

3. An order signed by the county judge reciting the filing of the petition and the facts therein recited, and the filing of the consent and the agreement, and also that "the said David G. Strahn, the father of said minor, and the said minor, Mary Eliza Strahn, and the said petitioner, being present before the county judge of said county of San Joaquin, in open court, were then and there (save and except said child) duly sworn and examined separately in relation thereto," and ordering "that said Mary Eliza Strahn, minor child of said David G. Strahn and Nancy Ann Strahn, be adopted, and that the said minor is hereby adopted by said William B. Johnson, under and in pursuance of chapter 2 of title 2 of the Civil Code of California, and the acts amendatory thereof, and that said Mary Eliza Strahn be regarded and treated in all respects as the child of said William B. Johnson, and that she take his family name." These documents were severally entitled "In the County Court of San Joaquin County," and were each indorsed by the clerk, "filed July 8, 1874."

XCVIII. CAL.—35

Adoption has the effect to change the *status* of an individual from that which was impressed upon him at his birth, and can never take place unless authorized by some positive law, and then only to the extent so authorized and in the manner prescribed by the statute conferring such authority. The common law made no provision for adoption, but within the past fifty years statutes upon that subject and providing for its exercise have been enacted in a majority of the states of this country. The principles upon which these statutes are based are taken from the civil law. They are also to be found in the Twelve Tables, and were the subject of many social regulations in Roman history, and were finally embodied by Justinian in his Institutes. (Lib. I., tit. 11, *De Adoptionibus*.) Under this system an adoption was always attended with restrictions and made a matter of public ceremony and sanction. (Cod. Just., lib. VIII., tit. 48.)

The provisions necessary to effect an adoption vary in different states, and hence, in considering opinions of other courts, it is necessary to read them in the light of the statutes under which they were given. In many of the states the proceedings partake of the nature of a judicial proceeding, either in the form of an action in court upon notice to the interested parties, wherein a judgment is rendered from which an appeal may be taken, or, if not in the form of an action, are conducted in the presence of the court, so far as to be made a matter of record therein under its sanction; while in others the act of adoption is invalid until it has been authenticated before some designated officer and made a matter of public record. The provisions of the Civil Code of this state differ materially from those of any other state to which our attention has been called, and are characterized by much greater simplicity. The various steps requisite to an adoption under this code are in the nature of a deed of adoption which is required by the statute to be authenticated before the county judge. Upon such authentication and sanction the act of adoption is complete, and when thus executed and authenticated becomes the only evidence by which the adoption can be established. These provisions of the Civil Code are in no respect judicial in their requirements, and are entirely dissociated from any judicial supervision or sanction.

The provision for their sanction by the county judge does not make it a judicial proceeding, or subject the acts done to the rules governing judicial acts. The county judge has been selected by the legislature as the officer to be charged with the function of solemnizing the ceremony of adoption, but his duties in the exercise of that function are no more of a judicial character than would be the same duties if performed before a notary public. (*In re Stevens*, 83 Cal. 331; 17 Am. St. Rep. 252. See also *People* v. *Bush*, 40 Cal. 346.) "Jurisdiction," in the sense in which that term is ordinarily employed, is not predicable of the function of the judge in making the order which he is authorized to make under section 227 of the Civil Code, but his action thereunder resembles more the execution of a power conferred upon him by the statute. The statute has conferred upon him an authority to make the order provided in that section whenever certain conditions have been complied with, but, as the power to make the order is conditional, it is always requisite to show that the condition under which the authority could be exercised existed, before the exercise of the power can be invoked in support of any right claimed thereunder. There is no provision in the code authorizing or sanctioning the filing of the instruments with the clerk, or making a record of the act of adoption, or of the order of the county judge, either in the minutes of the court or in any of the public records of the county.

The law upon this subject as it existed in 1874 is contained in sections 226 and 227 of the Civil Code, which are as follows:—

"Sec. 226. The person adopting a child, and the child adopted, and the other persons whose consent is necessary, must appear before the county judge of the county where the person adopting resides, and the necessary consent must thereupon be signed, and an agreement be executed by the person adopting to the effect that the child shall be adopted and treated in all respects as his own lawful child should be treated.

"Sec. 227. The judge must examine all persons appearing before him pursuant to the last section, each separately, and if satisfied that the interests of the child will be promoted by the adoption, he must make an order declaring that the child shall henceforth be regarded and treated in all respects as the child of the person adopting."

From these sections it is seen that the acts to be performed before the adoption is complete are:—

1. The person adopting the child and the child adopted, together with its parent or parents, must all appear before the county judge, and he must make a separate examination of each of the persons appearing before him.

2. The parents of the child must execute a written consent to its adoption by the person proposing to adopt it, and he must execute an agreement to the effect that the child shall be adopted and treated in all respects as his own lawful child should be treated.

3. After such adoption and the execution of said instruments, the judge, "if satisfied that the interests of the child will be promoted by the adoption," must make an order sanctioning the adoption of the child.

The code is silent as to the character and extent of the examination to be made by the judge of either of the persons who are to appear before him, but, inasmuch as the evident object of this examination is that the judge may be satisfied that the interests of the child will be promoted by the adoption, it is apparent that the extent, as well as the character, of the examination must be determined by the judge according to the circumstances of each case. The provision of the section is, however, imperative and mandatory that the judge "*must* examine all persons (including the child) appearing before him." The fact that the consent of the child, if under twelve years of age, is not required, does not obviate the necessity of its examination. The examination is not for the purpose of obtaining any consent, as that, both of the parent, as well as the adopter, must have been previously given, and is required to be evidenced by writing, but is for the purpose of satisfying the judge whether the interests of the child will be promoted by the adoption. There would seem to be a greater necessity for an examination by the judge of a child under twelve years of age than of one above that age, for as the child above twelve years of age must give its individual consent, the ascertainment whether such consent was voluntary would greatly dispense with any further examination, whereas, in the case of an infant under twelve years of age, a greater responsibility is placed upon

the judge in determining whether the interests of the child will be subserved by the adoption. For this purpose the judge would naturally inquire into the character and circumstances of the person adopting, the motives influencing the parent to give its consent, the history and life of the child, and whenever the child was capable of giving expression to its feelings or wishes, these feelings and wishes would be not only proper but essential subjects of examination. The character of the child, its sex, its age, its feelings towards its parent, as well as toward the adopter, would all be elements for the purpose of giving to the judge information on which to base his determination.

The precise age at which an examination would be followed with results tending to the satisfaction of the judge cannot be fixed by general rules, but must be left to the individual case. Even in matters which affect the interests of other persons, and where the child is without any interest, he can be a witness if over ten years of age, and also though under that age, if he is capable of receiving just impressions of the facts respecting which he is examined and of relating to them truly. (Code Civ. Proc., sec. 1880.) There is no precise age at which a child can be regarded as absolutely disqualified from testifying, and therefore it has been wisely left to the judge to determine, after an examination in each particular case, the extent to which he will prosecute his inquiries for the purpose of determining its competency. The rule which formerly obtained in England, that as the child could not be examined except under oath, its evidence was excluded unless it understood the nature of an oath, not only does not obtain in this state, but would be inapplicable to the case under consideration, as the examination of neither of the parties is required to be under oath. While an infant of only a few months of age would not be competent to respond to any examination by the judge, it is equally clear that a child of eleven years of age would be presumed to have decided preferences, which should be consulted for the purpose of satisfying the judge whether its interests would be promoted by the adoption proposed. A child of five years of age has ordinarily reached such maturity as to be able to have preferences as well as memory, and to give intelligent responses to the questions that might be put to it by the judge. It was

doubtless for this reason that the legislature required that such examination should be made in all instances, and that the judge should determine in each case to what extent the examination should proceed, rather than limit the age at which it might be made. As in the case when a child is a witness upon matters between other parties, its competency can be determined only after a preliminary examination. Such examination must be had in every case under the statute in question for the purpose of determining in the first instance whether the child is competent to give answers to the inquiries, and if so, then the examination. should be continued as to the matters which may enlighten the judge in reaching his conclusion.

But it is not necessary to find a reason for the form in which the law has been enacted, or to say that because the reason which would exist in some cases does not exist in the individual case, therefore the requirements of the statute need not be observed. Laws are enacted for the purpose of prescribing a rule of action applicable to all the cases which fall within the class for which they are enacted; but to substitute the will of one man in each individual case for a general rule made for an entire class would be to subject society to a rule of men and not of law. It would be difficult to give a satisfactory reason for requiring that a summons in a civil action should be personally served upon a new-born infant in its nurse's arms, as well as upon the person who has the custody of the infant, except that it is the requirement of the statute that in all cases there shall be a personal service upon the defendant. There would be no certainty or safety in judicial proceedings if it were left to the arbitrament of a judge to determine in each case whether the defendant was of such tender years that it would be useless to make a personal service upon it, and therefore the legislature has wisely determined that there shall be personal service upon the defendant in all cases, as it has also said that in all cases the judge shall make a separate examination of a child proposed for adoption.

As it appears upon the face of the order made by the county judge that he disregarded this requirement of the code for an examination by him of the child, I am of the opinion that there was an essential defect in the proceedings taken for its adoption, and that the order of the judge sanctioning the adop-

tion was made without a compliance with one of the essential provisions of the code, and consequently conferred no rights either upon the person adopting or upon the child.

In thus holding that it is necessary to show a compliance with all the requirements of the code, I do not disregard the provisions of section 4 of the Civil Code, that "its provisions are to be liberally construed, with a view to effect its objects and to promote justice." This rule for a liberal construction is applicable only to the provisions of the code, and is limited to the objects sought to be affected. The most extended application of this rule has never justified the disregard of plain requirements of a statute, or the omission of any act which is specifically declared essential to effecting the object of the provision. "*Liberal construction* does not mean enlargement or restriction of a plain provision of a written law. If a provision of the code is plain and unambiguous it is the duty of the court to enforce it as it is written. If it is ambiguous or doubtful, or susceptible of different constructions. or interpretations, then such liberality of construction is to be indulged in as within the fair interpretation of its language will effect its apparent object and promote justice." (*In re Jessup*, 81 Cal. 419.) "The power to adopt minor children is a creation of the statute which was unknown to the common law, and the mode must be held to be the measure of the power." (*Ex parte Chambers*, 80 Cal. 219.) "The right of adoption is purely statutory. It was unknown to the common law, and as the right when acquired under our statute operates as a permanent transfer of the natural rights of the parent, it is repugnant to the principles of the common law, and one who claims that such a change has occurred must show that every requirement of the statute has been strictly complied with. It cannot be said that one condition is more important than another." (*Ex parte Clark*, 87 Cal. 647.)

The construction of a statute is the interpretation of the meaning of the legislature, and when its meaning is clear, or the language of the statute is unambiguous, there is no opportunity for construction. It is only when the language of an act is susceptible of different meanings, or when the object sought or the means provided for effecting the object are imperfectly expressed that rules of construction are invoked. The rule directing that

a statute shall be liberally construed means that the terms therein used are not to be construed so strictly as to defeat the evident purpose of the statute by a strict adherence to the letter, but that, if the acts required by the statute are performed, it will be a sufficient compliance with the legislative intent, though they may not be performed in the exact mode or order prescribed by the statute. In the present case, for example, the provision in section 226, that when the parties appear before the county judge "the necessary consent must thereupon be signed, and an agreement executed by the person adopting," does not require the literal construction that such consent and agreement are ineffective if signed prior to the appearance of the parties before the judge. The object of the statute is that the consent and agreement shall be executed and approved by the judge, and it is immaterial whether they are signed before the parties appear before him or are signed in his presence, if their execution is conceded and sanctioned by the judge. It is never permitted, however, under any rule of liberal construction to dispense with an explicit requirement of the statute, upon the theory that it could not have been intended by the legislature, or that the court or judge shall exercise its discretion in determining whether such requirement is essential. It is not within any definition of liberal construction for a court to substitute its own judgment for that of the legislature.

It cannot be presumed that the judge did any other act or made any other examination than he has recited in his order, and in the face of his recital that he examined the parties who appeared before him, "save and except the child," it cannot be presumed that he made any examination whatever of the child. As the order was made in the execution of a statutory authority, it was necessary to show by the order itself the existence of all the conditions under which the statute permitted him to exercise such authority, and although he was a county judge, yet the execution of this authority was not in the exercise of any judicial power, and the rules of presumption that are invoked in support of judicial action have no application.

I think that the judgment and order should be affirmed.

PATERSON, J., concurred in the views expressed by Mr. Justice HARRISON.