[Sac. No. 1927. In Bank.—December 10, 1912.]

In the Matter of the Estate of FREDERICK COX JOBSON, Deceased. E. C. JOBSON, Appellant, v. SUE C. JOBSON, Respondent.

ESTATE OF DECEASED PERSONS—SUCCESSION TO SEPARATE PROPERTY OF INTESTATE—SOURCE OF PROPERTY IMMATERIAL.—The statute of succession in this state, in providing for the disposition of the separate property of one dying intestate, makes no distinctions based upon the channel through which the property may have come to the decedent.

ID.—RIGHT OF INHERITANCE—ADOPTION—STATUTORY REGULATIONS.— The right of inheritance, and also the subject of adoption and the

rights and obligations springing therefrom, are purely matters of statutory regulations.

ID.—EFFECT OF ADOPTION—NATURAL RELATION SUPERSEDED.—The effect of an adoption under the Civil Code is to establish the legal relation of parent and child, with all the incidents and consequences of that relation, between the adopting parent and the adopted child. This necessarily implies that the natural relationship between the child and its parents by blood is superseded.

ID.—RIGHT OF SUCCESSION BY ADOPTING PARENT—EXCLUSION OF NATURAL PARENT.—As the act of adoption confers upon the adopted child the right to succeed to the estate of the adopting parent in like manner as a child of the blood, it follows that, upon the death of the child, the adopting parent is entitled to inherit as a parent, to the exclusion of the parent by blood.

ID.—DEATH OF ADOPTING PARENT—NATURAL RELATION NOT REVIVED.—The relation of parent and child, which existed between the parent by blood and the child prior to the adoption and which was supplanted by the new relation thereby created, is not revived by the death of the adopting parent prior to the death of the child.

ID.—DEATH OF CHILD AFTER DEATH OF ADOPTING PARENT—NATURAL PARENTS DO NOT SUCCEED TO ESTATE.—Upon the death intestate of the adopted child after the death of the adopting parent, the parents by blood have no right of inheritance as parents to the child's estate.

APPEAL from an order of the Superior Court of Sacramento County denying a petition for the partial distribution of the estate of a deceased person.   C. N. Post, Judge.

The facts are stated in the opinion of the court.

Louis Oneal, Owen D. Richardson, and O. G. Hopkins, for Appellant.

George & Hinsdale, for Respondent.

SLOSS, J.—Appeal from an order denying a petition for partial distribution.

The decedent, Frederick Cox Jobson, was the legitimate child of E. C. Jobson, the appellant, and Jennie A. Jobson, his wife.  In April, 1889, Frederick Cox Jobson, then three years of age, was adopted by his maternal grandfather, Frederick Cox.  The adoption proceedings, which took place in the county of Sacramento, where all of the parties concerned

resided, were regular and valid, having been conducted in strict conformity with the requirements of the Civil Code. (Secs. 221 to 230.) Both the father and the mother duly consented in writing to the adoption, as did the wife of Frederick Cox. Thereafter Frederick Cox Jobson became, and until his death remained, a member of the family of said Frederick Cox and his wife, Jennie Cox.

On March 25, 1906, Frederick Cox, the adopting father, died testate, having bequeathed a legacy of ten thousand dollars to his adopted son. In June, 1909, Frederick Cox Jobson, the adopted son, died intestate, owning no property except a portion of the legacy which had been bequeathed to him by Frederick Cox. He left surviving a widow, Sue C. Jobson (the respondent herein), his father in blood (the appellant), his mother in blood, Jennie A. Peltier, formerly Jennie A. Jobson, and Jennie Cox, the widow of Frederick Cox, the adopting parent. He left no issue.

The father, E. C. Jobson, filed his petition for partial distribution, contending that he was entitled to one-fourth of the estate of the decedent. And such was clearly his right (Civ. Code, sec. 1386, subd. 2), if, in contemplation of law, he was the "father" of Frederick Cox Jobson at the date of the latter's death. On the other hand, the respondent takes the position that the adoption proceedings terminated the legal, as distinguished from the natural, relation of father and child between the respondent and the decedent, and that, under subdivision 4 of section 1386, she, the widow, was entitled to the entire estate. This was the view taken by the court below.

It may properly be observed, at the threshold of the inquiry, that the rights of the parties are not affected by the circumstance that the estate in dispute was derived entirely from the adopting parent. The source from which the property came may well influence one's notions of the natural equity of the appellant's claim. But our statute of succession, in providing for the disposition of the separate property of one dying intestate, makes no distinctions based upon the channel through which the property may have come to the decedent. "Succession to estates is purely a matter of statutory regulation which cannot be changed by the court." (*In re Ingram,*

78 Cal. 586, 588, [12 Am. St. Rep. 29, 21 Pac. 435]; see, also, *McCaughey* v. *Lyall,* 152 Cal. 615, 617, [93 Pac. 681].)

The case turns, then, upon the meaning and effect of the sections of the Civil Code relating to adoption. As the right of inheritance is purely a matter of statutory regulation, so is the subject of adoption and the rights and obligations springing therefrom. (*Ex parte Chambers,* 80 Cal. 219, [22 Pac. 138]; *Ex parte Clark,* 87 Cal. 641, [25 Pac. 967]; *Estate of Johnson,* 98 Cal. 536, [21 L. R. A. 380, 33 Pac. 460].)

The sections important to be considered here are 227, 228, and 229 of the Civil Code. Section 227 as it read at the time of the adoption in question provided for the making of an order by the judge (the word "court" has since then been substituted for "judge"), declaring "that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting." Section 228 reads: "A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation." Section 229 is as follows: "The parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it."

These sections do not in terms provide for the inheritance by the adopted child from the adopting parent or *vice versa.* Whatever the rule may be with respect to the right of succession, it must apply to both parties alike. The language defining the relationship created by the adoption is applicable to both alike, and it is difficult, therefore, to see how any discrimination can be made between the party adopting and the child adopted. "After adoption," says section 228, "the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation." If, therefore, the act of adoption confers upon the child the right to succeed to the estate of the adopting parent in like manner as a child of the blood, it must follow that, upon the death of the child, the adopting parent is entitled to inherit as a parent. The decisions of this court establish beyond the possibility of dispute the proposition that the adopted child is entitled to so inherit. (*Estate*

*of Newman,* 75 Cal. 213, [16 Pac. 887] ; *Estate of Evans,* 106 Cal. 562, [39 Pac. 860] ; *Estate of Williams,* 102 Cal. 70, [41 Am. St. Rep. 163, 36 Pac. 407].) In *Estate of Newman,* the court, referring to the provisions of sections 227 and 228, said: "The language is general and comprehensive. . . . If the adopted child is by virtue of its *status* to be 'regarded and treated in all respects as the child of the person adopting' and is to 'have all the rights and be subject to all the duties of the legal relation of parent and child,' the right to succeed to the estate of the deceased parent must be included." There are other decisions which may be cited as exemplifying the disposition of the court to treat the act of adoption as creating a relation which produces, as between the parties, the legal results flowing from the natural relationship of parent and child. Thus in *Estate of Taylor,* 131 Cal. 182, [63 Pac. 345], it was held that, on an application for the appointment of a guardian, the residence of the adopting parent was to be regarded as the residence of the child adopted. Adopted children of the daughter of a testator have been held to be included within the term "any lineal descendant" of the decedent, and thus exempted from the burden of a collateral inheritance tax. (*Estate of Winchester,* 140 Cal. 468, [74 Pac. 10].) An adopted child is a "child," within the meaning of section 1365 of the Code of Civil Procedure, and thus entitled to letters of administration of the estate of the adopting parent. (*Estate of Camp,* 131 Cal. 470, [82 Am. St. Rep. 371, 63 Pac. 736] ; *Estate of McKeag,* 141 Cal. 404, [99 Am. St. Rep. 80, 74 Pac. 1039].) In *Younger* v. *Younger,* 106 Cal. 377, [39 Pac. 779], a decree of divorce, granted to the wife, had given her the custody of a minor child. Thereafter the child was adopted by its grandparent. Thereby, as this court held, the court which had rendered the divorce decree was ousted of jurisdiction to modify the portion of the decree relating to the custody of the child. "By the adoption proceeding," it was said, "the *status* of the child was wholly changed; it became *ipso facto* the child of another, and ceased to sustain that relation, in a legal sense, to its natural parents."

These various rulings seem to establish the doctrine that the effect of an adoption under our Civil Code is to establish the legal relation of parent and child, with all the incidents and

consequences of that relation, between the adopting parent and the adopted child. This necessarily implies that the natural relationship between the child and its parents by blood is superseded. The duties of a child cannot be owed to two fathers at the same time. If the decedent, Frederick Cox Jobson, had died intestate, leaving surviving both his natural father and his foster-father, Frederick Cox, it cannot be doubted that the latter would have been entitled to inherit such portion of the decedent's estate as, under our statute of distribution, descended to the father. The appellant, E. C. Jobson, the natural father, would have been entitled to nothing, for the reason that he had, by virtue of the adoption proceeding, ceased to sustain the legal relation of father to the decedent. Is his situation altered by the fact that the foster-father died before the adopted child? We do not see that it is. There is nothing in the statute which limits the effect of the adoption to the period of the lives of the adopting parent and the adopted child. To sustain the appellant's contention, we should have to hold that, although the relation of parent and child, existing between him and the decedent, was supplanted by the new relation created by the adoption, it was again revived by the death of the foster parent. Such a holding would be to make, rather than to construe, a statute. Once we have reached the conclusion that the effect of an adoption under the code is to substitute the adopting parent for the parent by blood, we must give to that conclusion its logical results. From the time of the adoption, the adopting parent is, so far as concerns all legal rights and duties flowing from the relation of parent and child, the parent of the adopted child. From the same moment, the parent by blood ceases to be, in a legal sense, the parent. His place has been taken by the adopting parent.

It should perhaps be added that the case before us presents no question of the effect of adoption upon the rights of any persons except the natural parents, the child, and the adopting parent *inter. sese.* There is no occasion to express any opinion, and we express none, upon the existence of rights that might be claimed collaterally by either party to the adoption; that is to say, as against the natural kin of the other. It would no doubt be possible to suggest contingencies in which the views we have expressed would lead to embarrassing and

difficult problems.    But we think the same may be said of any other view that might be adopted.

We have not deemed it necessary to discuss at any length the decisions in other jurisdictions.    The statutes of other states differ materially from ours, and the cases on the subject therefore afford no great aid to us.    For example in such cases as in *In re Namauu,* 3 Hawaii, 484, *White* v. *Dotter,* 73 Ark, 130, [83 S. W. 1052] ; *Hole* v. *Robbins,* 53 Wis. 514, [10 N. W. 617] ; *Reinders* v. *Koppelmann,* 68 Mo. 482, [30 Am. Rep. 802], and *Upson* v. *Noble,* 35 Ohio St. 655, in which it was held that the adopting parent could not inherit from the child, the statute or adoption agreement, in each instance, contained language which either expressly or by implication limited the right of inheritance to the child.    On the other hand, in Indiana, where the statute more closely resembles the provision of our Civil Code, the court, after first denying the right of the adopting parent to inherit (*Barnhizel* v. *Ferrell,* 47 Ind. 335), has, upon a later review of the question, reached the contrary conclusion.    (*Humphries* v. *Davis,* 100 Ind. 275, [50 Am. Rep. 788] ; see, also, *Calhoun* v. *Bryant,* (S. D.) 133 N. W. 266.)

On the whole case, we are satisfied that the court below correctly ruled that the appellant was not entitled to share in the estate of the decedent.

The order appealed from is affirmed.    '

Angellotti, J., Henshaw, J., and Melvin, J., concurred.

SHAW, J., dissenting.—I dissent.    In my opinion the true principles governing the construction and application of statutes providing for the adoption of children is that the natural relation and the laws governing it, are thereby altered and affected only so far as the statute of adoption by its terms declares or provides, either expressly or by necessary implication, and no farther.    Like an invading force upon a hostile domain, it prevails and controls only so far as its lines extend.    Beyond those limits all remain under the original control.

The Newman case (75 Cal. 213, [16 Pac. 887]), declaring that an adopted child inherits from the adopting parent, the Johnson case (98 Cal. 536, [21 L. R. A. 380, 33 Pac. 460]),

holding that such child is entitled, as an heir, to administer on the adopting parent's estate, and the Winchester case (140 Cal. 468, [77 Pac. 10]), that the child's share is exempt from inheritance to the same extent as that of a natural child, all depending on the same principle of heirship, go to the extreme verge of the invading force of the adoption statute. The reason for these decisions is plain and is found in the statute itself. The descent is cast at the moment of death and the persons on whom the estate then falls are determined by their relationship or kinship to the decedent the instant before his death. The adoption makes the one, legally, a child and the other, legally, a parent, at the time of death. This establishes the *status* of legal kinship at that time and the results stated by these decisions necessarily follow. These cases, however, do not carry the effects of the adoption to a period after the death of the parent.

The whole purpose and object of the adoption statute is to create, artificially, the relation of parent and child, to provide a *status* controlling them for their joint lives. That relation cannot last longer than the lives of the two parties to it. When either dies, the relation ceases and there remains nothing upon which the statute under which it was created can operate. The relation has served its purpose and has terminated. It has not, as has the natural relation, blood connections through which it may continue to work after it has itself ceased to have a present existence. There is not in the adoption statute a word to the effect that, where the adoption has served its purpose by prevailing over the natural relation during the joint lives of the two parties and has ended by the death of one of them, it shall thereafter continue for any purpose, or that there is to be thereafter any legal or constructive kinship, or mutual rights of inheritance, between the adopted child and the natural kin of the deceased foster parent, or between the foster parent and the natural kin of the deceased child. So far as the statute goes and while the new *status* lasts, the natural relations are altered, removed, or suspended. But they are not utterly destroyed. The natural inclinations and affections must remain. The statute cannot destroy them. Beyond the limits of the changes effected by the adoption, and after it has terminated, the natural relations should prevail and control, since there are then, in that field, none other.

The result should be and would be that, after this termination of the mutual relation, the inheritance from the survivor, upon his subsequent death, will be controlled by the general law of descent and the natural relationship will prevail. There will be then no artificial relation existing to cause a different course of descent from that to the natural kin.

So far as unjust or inequitable consequences may properly affect the question, it seems to me that the doctrine of the prevailing opinion, including, as it does, the doctrine that the adoption completely and forever removes the adopted child from legal relationship to his blood kin and destroys the mutual relations and rights of each arising therefrom, practically transplanting him into another family, without his consent or wish, unless he happens to be over twelve years old, will cause many more undesirable consequences than the doctrine that the adoption does not affect conditions arising after death has terminated it. If the child is an infant when adopted and the foster parent should presently die, the natural parents would have no legal right to its custody. It would be a waif, a legal orphan. If it should, in after life, accumulate property, and thereupon die without issue or wife surviving, the property would not go to its own kin, but to the family of the long since deceased foster parent. The children of such child would bear no legal relationship to their blood kin, but would belong to the family of the foster parent and would, presumably, inherit from the collateral relatives of that family. The consequences cannot all be foreseen, but these I have mentioned suggest that much confusion and injustice will arise from the rule announced by the court.

LORIGAN, J.—I concur in the views expressed by Justice Shaw in the foregoing dissenting opinion.