# In Re Knott.

## (*Knoxville.*   September Term, 1917.)

**1. ADOPTION.   Nature of right.**

The right of adoption is not a natural right, and was unknown to the common law, and originated in statute. (*Post, pp.* 352-353.)

Cases cited and approved: Hockaday v. Lynn, 200 Mo. 456; Johnson's Estate, 98 Cal., 531; Butterfield v. Sawyer, 187 Ill., 598; Markover v. Krauss, 132 Ind., 294; Ross v. Ross, 129 Mass., 243.

**2. ADOPTION.   Statutes in derogation of common law.   Construction.**

Thompson's Shannon's Code, sections 5409-5411, relating to adoption, are in derogation of the common law, and must be strictly construed.   (*Post pp.* 353-354.)

Cases cited and approved: Jessup's Estate, 81 Cal., 408; Furgeson v. Jones, 17 Or., 204; McCormick's Estate, 108 Wis., 234.

Code cited and construed: Secs. 5409-5411 (T.-S.).

**3. ADOPTION.   Proceedings.   Notice to parents.   Statute.**

Thompson's Shannon's Code, sections 5409-5411, relating to adoption, to the petition, decree, and the effect of adoption, but not providing for notice to the natural parents of the child to be adopted, presumptively. intended that such proceedings should be in accordance with the usual practice of courts of record, and thereunder notice to such parents is necessary, but, the notice need not necessarily be a formal notice, though some notice and some appearance must be shown.   (*Post, pp.* 353-354.)

**4. ADOPTION.   Notice to natural parents.**

The adoption statute (Thompson's Shannon's Code, sections 5409-5411), to be constitutional, must be construed to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption or where the proof shows that they have abandoned the child, or that it is manifestly to

its interest that it be taken from their custody by some judicial proceeding of which they have notice. (*Post, pp.* 354-355.)

5. ADOPTION.    Decree.    Effect.

Adoption in legal contemplation creates the relationship of parent and child between persons where it is not naturally so existing, and severs in many respects the natural relations between the child and its parents. (*Post, pp.* 354-355.)

6. ADOPTION.    Right of natural parents.

Where the father of an infant child had not abandoned it, and was solicitous for its welfare, and desired its society, care, and custody, and was financially able to provide for it in his station of life, and was morally fit for its custody, and did not consent to its attemped adoption by strangers, and know nothing of proceedings begun for that purpose, and the mother had practically abandoned the child and had consented to its adoption, the father was entitled to its custody. (*Post, p.* 355-56.)

---

FROM KNOX.

---

Appeal from the County Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—R. A. Brown, Judge.

Frank Sanders, for plaintiff.

J. W. Culton, for defendants.

Mr. Justice Lansden delivered the opinion of the Court.

This case originated in the county court of Knox county, and was begun by the petition of J. G. Harrill

and wife to adopt Louise Knott, the infant daughter of J. C. Knott and wife. The petition set forth that the petitioners are desirous of adopting the said Louise, that they are able financially and physically, and otherwise are suitable persons, to adopt and rear the child; that Louise had been abandoned by the father, J. C. Knott, and that the mother had consented to the proceeding.

The county judge heard the testimony of the petitioners and the mother of the infant and one other witness, from all of which he decreed the adoption as prayed in the petition. The judgment of the court recites that the child is about fifteen months of age, that its parents are now living apart, and that it has been abandoned by them for several months, and that petitioners have been caring for and supporting it since the 1st of June, 1916, and that a strong mutual attachment has arisen between them and the said Louise, and that petitioners are so situated that they can bestow the proper care and attention upon the child, and that it is manifestly to its best interest that it be adopted by the petitioners, and that the mother expressly consented that the adoption might take place.

The father was not made a party to the proceeding, and he had no notice, actual or otherwise, thereof or the purpose upon the part of the petitioners to have the child adopted. When he learned of the purported adoption, he filed a petition in the cause denying all of the material allegations of the original petition, and especially denying that he had abandoned the infant,

and that he desired its adoption by the original petitioners. His petition is somewhat lengthy and goes into detail about the matter, and prays, among other things, that his petition be treated as an answer to the original petition, that Harrill and wife be served with a copy of the petition and be required to answer it, and that the order of adoption be vacated and set aside and for nothing held, and that the petitioner be held and be made a party to the proceeding.

This was done, and the county judge heard the testimony of the father and of several of his witnesses, together with the testimony of the mother. Upon a final hearing he dismissed the petition of the father, and held that he had not shown sufficient evidence to justify the court in vacating the order of adoption previously entered. A motion for a new trial was made and entered, which was overruled, and an appeal taken to the court of civil appeals. That court reversed the action of the county judge, and the case is before us upon the petition of Mr. and Mrs. Harrill for *certiorari*.

The right of adoption is not a natural one. It contravenes common right, and originated with the statute. It was unknown to the common law, although it was practiced by the ancients of Greece and Rome, and probably other ancient people, and is of the remotest antiquity. *Hockaday* v. *Lynn*, 200 Mo., 456, 98 S. W., 585, 8 L. R. A. (N. S.), 117, 118 Am. St. Rep., 672, 9 Ann. Cas., 775; 1 R. C. L., 593; *Johnson's Estate*, 98 Cal., 531, 33 Pac., 460, 21 L. R. A., 380; *But-*

*terfield* v. *Sawyer,* 187 Ill., 598, 58 N. E., 602, 52 L. R. A., 75, 79 Am. St. Rep., 246; *Markover* v. *Krauss,* 132 Ind., 294, 31 N. E., 1047, 17 L. R. A., 806; *Ross* v. *Ross,* 129 Mass., 243, 37 Am. Rep., 321.

The statutes of this State respecting adoption are very meager, and are contained in sections 5409, 5410, and 5411 of Thompson's Shannon's Code, which are as follows:

"5409. Any person wishing to adopt another as his child, shall apply by petition, signed by the applicant, and setting forth the reasons therefor, and the terms of the aforesaid adoption.

"5410. The court, if satisfied with the reasons given, may sanction the adoption by decree, entered upon the minutes, embodying the petition, and directing the terms of adoption.

"5411. The effect of such adoption, unless especially restrained by the decree, is to confer upon the person adopted, all the privileges of a legitimate child to the applicant, with capacity to inherit and succeed to the real and personal estate of such applicant, as heir and next of kin; but it gives to the person seeking the adoption no mutual rights of inheritance and succession, nor any interest whatever in the estate of the person adopted."

The sections of the Code above set out are in derogation of the common law, and must be strictly construed. *Jessup's Estate,* 81 Cal., 408, 21 Pac., 976, 22 Pac., 742, 1028, 6 L. R. A., 594; 1 R. C. L., 595, and cases cited. They do not provide for notice to the nat-

ural parents of the child to be adopted, but they do provide for proceedings in courts of record, and of course it must be presumed that the legislature intended that such proceedings would be in accordance with the usual practice of such courts. It could not be thought that the legislature intended that a child should be taken from the custody of either one of its natural parents, unless it was with their consent or made to plainly appear that it was to the interest of the child that it be done. This could not be legally adjudged unless the parents should have notice of the proceeding or voluntarily appear. The notice need not necessarily be a formal one, but some notice and some appearance must be shown. The plainest instincts of natural justice require that the natural parents should know of the proceeding before the custody of their child is taken from them and given to another. It has been so adjudged in many cases, some of which are: *Furgeson* v. *Jones,* 17 Or., 204, 20 Pac., 842, 3 L. R. A., 620, 11 Am. St. Rep., 808; *Ross* v. *Ross,* supra; 30 L. R. A. (N. S.), 146, note; *McCormick's Estate,* 108 Wis., 234, 84 N. W., 148, 81 Am. St. Rep., 890; 1 R. C. L., 607.

It would seem from the authorities that adoption statutes, in order to be constitutional, must be construed so as to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption, or where the proof shows that the child has been abandoned by its natural parents, or that it is manifestly to the interest of the child that it be

In re Knott.

taken from their custody by some judicial proceeding of which they had notice. The mere fact that the petitioners desire to adopt the child and that they are in better financial condition than its natural parents will never authorize a decree of adoption. Adoption, in legal contemplation, creates the relationship of parent and child between persons where it is not naturally so existing, and severs, in many respects, the natural relations existing between the child and its parents. The relations which exist between the parent and child are sacred ones and have their foundation in nature, and the affection existing between them is stronger and more potent, and affords a greater protection to the child, than any relation which could be created by association merely. The right to the society of the child exists in its parents; the right to rear it, to its custody, to its tutorage, the shaping of its destiny, and all of the consequences that naturally follow from the relationship are inherently in the natural parents, and they cannot be deprived of these rights without notice, and upon some ground which affects materially the future of the child. 1 R. C. L., 607, and cases cited in the notes.

From the testimony in this case, we are convinced that the father of this infant not only had not abandoned it, but that he was at all times solicitous for its welfare, and desired its society and its care and custody. His testimony shows that he is financially able to provide for it in the station of life which he occupies, and that he is morally fit for its custody. It

In re Knott.

is also clearly shown that he did not consent to the attempted adoption, and knew nothing of the proceedings which were in progress for that purpose. We cannot say so much for the mother. It is manifest from her testimony that she was willing to the adoption and had practically abandoned the child. She also shows that she is probably not a fit person to have its custody, and does not care for its nurture and tuition.

We have examined all of the testimony in the case, and we are of opinion that Mr. Knott is entitled to the custody of his child, and that petitioners, Harrill and wife, are not entitled to adopt it. It therefore results that the decree of the court of civil appeals is affirmed.