[No. 9068.    Department One.    November 19, 1910.]

*In the Matter of the Guardianship of* MAX LEANDER WELLS,
*a Minor.*[1]

GUARDIAN AND WARD—JURISDICTION—RESIDENCE. A finding that
the residence of a child was at King county, is warranted, where it
appears that its mother had been staying there before leaving for
New York, intending to return to take up new work there, and left
the child there with relatives of the father, although prior thereto
she had spent some time with her own parents in Kitsap county.

ADOPTION—REVIEW—DISCRETION. Under Rem. & Bal. Code, § 1698,
authorizing an adoption where the court is satisfied of the fitness
and propriety thereof, a ruling will not be reviewed except for abuse
of discretion.

ADOPTION—DISCRETION—GUARDIAN AND WARD. Upon the hearing
of consolidated applications for the adoption of an orphan by rela-
tives of the mother, and for guardianship by relatives of the father,
the infant having no estate, it is not an abuse of discretion to deny
the adoption and grant the guardianship, where both parties are suit-
able to have the care of the child.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE. A new trial will not
be granted for newly discovered evidence that is almost wholly cumu-
lative and would not change the result.

Appeal from a judgment of the superior court for King
county, Frater, J., entered April 30, 1910, granting a peti-
tion for the appointment of guardians, upon findings of the
court, in a contest for the custody of a minor.    Affirmed.

*Douglas, Lane & Douglas*, for appellants.
*Brady & Rummens*, for respondents.

PARKER, J.—This is a controversy over the custody of
Max Leander Wells, a minor, now three years old, son of
Max Wells and Elsie Priest Wells, both deceased.    The
father died June 22, 1907, at Portland, Oregon. The mother
then came to Seattle to the home of F. Boyd Wells and Mrs.
Clarissa Ruelle, brother and sister of the deceased father

[1]Reported in 111 Pac. 778.

and husband, where the child was born July 12, 1907. There-
after the mother lived part of the time with her sister-in-law,
Mrs. Ruelle, and part of the time with her parents, Leander J.
Priest and wife, at Kingston, in Kitsap county. She was
employed as a teacher or tutor at both Kingston and Seattle
at different times. She became interested in the subject of
teaching defective children, and went to Rochester, New
York, to attend a school to receive training in that work.
She left her child with Mrs. Ruelle, at Seattle, expecting to
return there to take up her new work. After being at Ro-
chester a short time, she died on October 15, 1909. The
child has been in the care and custody of Mrs. Ruelle ever
since.

On January 5, 1910, F. Boyd Wells and Mrs. Clarissa
Ruelle, filed a petition in the superior court of King county
asking to be appointed guardians of the child. On the 11th
day of January, 1910, Leander J. Priest and wife, maternal
grandparents of the child, filed a petition in the superior
court for Kitsap county asking for the adoption of the child.
The adoption matter came on for hearing first, when counsel
for Mr. Wells and Mrs. Ruelle appeared and objected to the
jurisdiction of the court, upon the ground that the child was
not a resident of Kitsap county but of King county. The
proceeding upon that hearing resulted in counsel agreeing to
the court ordering the transfer of the adoption matter to the
superior court for King county for trial, on account of the
convenience of witnesses, the jurisdiction question not being
waived. Thereafter both matters were consolidated by the
superior court for King county. Counsel for Mr. and Mrs.
Priest objected to the jurisdiction of the superior court for
King county to hear the guardianship matter, upon the
ground that the child was not a resident of King county but
of Kitsap county. Their theory seems to be that the court
had jurisdiction of the adoption matter, but only because of
the change of venue. The consolidated matters were tried
by the court, resulting in the court finding that the child was

a resident of King county, followed by a judgment denying the prayer of the adoption petition, and granting the prayer for the appointment of Mr. Wells and Mrs. Ruelle guardians of the child. From this disposition of the matters, Mr. and Mrs. Priest have appealed to this court.

Learned counsel for appellants first contend that the court was without jurisdiction, because the evidence does not warrant the conclusion that the child was a resident of King county. This, of course, presents only a question of fact. Counsel for both sides proceed upon the assumption that it is to be determined by the domicile of the mother at the time of her death. The evidence is conflicting as to where she considered her domicile was for some time prior to her death. The evidence upon this question is voluminous, and goes into considerable detail relative to her residence covering the period following her husband's death. While the evidence shows that she spent a considerable part of her time with her parents at Kingston prior to the spring and summer of 1909, it seems clear that she had been staying with Mrs. Ruelle at Seattle for some time before going to New York, that she had her child there, and left it there with Mrs. Ruelle with the intention of returning to Seattle to take up her new work. We think the court was warranted in concluding that the residence of the mother and child was in King county. It follows that the court had jurisdiction.

It is next contended that the court erred in appointing respondents guardians and refusing to permit appellants to adopt the child. We are convinced by the evidence that both the appellants and respondents are suitable both morally and financially to properly care for this child. Appellants were asking for adoption of the child, not for his guardianship. The language of § 1698, Rem. & Bal. Code, clearly contemplates that the matter of adoption shall rest in the sound discretion of the court. The order is to be made when the court "shall be satisfied of the fitness and propriety of such adoption." It is possible for the superior court to abuse this

discretion by denying a prayer for adoption.   Such might be
the case where a child is illegitimate and is entirely abandoned.
And the person seeking the adoption is conceded to be a prop-
er person to rear the child.    True, these appellants cannot be
said to be unsuited to the rearing of this child, but he is not
abandoned to the world or illegitimate, but born in lawful
wedlock of eminently respectable parents, whose name he
bears.    This is a heritage he no doubt will prize in the future.
He is entitled to remain, in name, in law, and in the eyes of
the world, the son of his natural parents, unless there be
weighty reasons for his adoption by others.    Who can read
the last word of this dying mother to her boy and not see
that the bearing by him of the name of that mother and
father will always be a sweet remembrance and an influence
for good.    Upon her deathbed she writes to him this message:

"Darling Little Sonny:

"Before it is too late mother wants to write a letter to
you so when you are a man you can read what I want you
to be.    Whatever you do precious, join a church as soon as
you are old enough to understand what it means, and be an
earnest Christian so you can come and be with me and father,
and lover be good to auntie always.    Be my brave little or-
phan and everything will be all right.    Oh, sweetie I do so
want my baby.               Your loving mother,

"Elsie Wells."

"Keep all the little things of mine dearie for your own wife
and children.   Have a nice home for auntie Maud, won't you."

Clearly, the learned trial court did not abuse its discretion in
denying appellants' petition for adoption.

Since no one but respondents applied for guardianship of
the child, and the evidence shows that they are well fitted in
every way to assume such guardianship, and manifest a will-
ingness to bear the expense of his proper care, being fully
able to do so, he having no estate; we see no reason for inter-
fering with the order of appointment.

Appellants moved for a new trial upon the ground of newly
discovered evidence.    We find no merit in the motion.    The

new evidence claimed to have been discovered is almost wholly cumulative; and besides, we do not think it would change the result even if produced upon a trial.

We conclude that the learned trial court rightly disposed of the matters. Its judgment is affirmed.

RUDKIN, C. J., MOUNT, FULLERTON, and GOSE, JJ., concur.