[No. 12232.   Department One.   May 29, 1915.]

*In the Matter of the Adoption of* NORA MAY POTTER.[1]

ADOPTION—ABANDONMENT—WRITTEN CONSENT OF PARENT. Rem. & Bal. Code, § 1696, requiring the consent of a parent to the adoption of a child by another, dispenses with such consent and substitutes that of the legal guardian where the parent has abandoned the child; but, even if consent of the parent were necessary in cases of abandonment, a writing by the mother to another, turning over "my right and title" to the child, would be sufficient evidence of consent.

ADOPTION—ABANDONMENT BY PARENT—SUFFICIENCY OF EVIDENCE. Abandonment by a mother of her illegitimate child is established by a showing that, within a few hours after its birth, she expressed her dislike for the child and her desire to get rid of it; that she gave it to a woman who offered to adopt it, and several days later gave such foster mother a writing, turning over all her right and title to her baby girl; that she never thereafter concerned herself about the child nor contributed in any way to its support; and that, on being served with notice of the adoption proceedings, she contented herself with filing an objection without taking the trouble to put in an appearance at the hearing.

ADOPTION—WELFARE OF CHILD. In matters of adoption, the dominant question is the welfare of the child and the wishes of the parent will be subordinated to that consideration.

Appeal from a judgment of the superior court for Okanogan county, Chas. A. Johnson, Esq., judge *pro tempore*, entered March 19, 1914, denying a petition for an order of adoption, upon findings of the court. Reversed.

*Smith & Gresham*, for appellant.

CHADWICK, J.—On the 23d day of November, 1910, one Elsie Potter gave birth to an illegitimate child. Nellie Myers, the petitioner and appellant herein, a caller at the place where the mother was staying, was informed that the mother, a girl only sixteen years old, had given birth to a child. Petitioner talked with the mother, who told her that she wanted her to "take it away and get rid of it. I don't

[1]Reported in 149 Pac. 23.

want it and I don't want to see it, and get it away just as quick as you can." Appellant informed the mother that she would be willing to take the child if she would be allowed to adopt it. She was told that she might adopt it as soon as she, the mother, could "get out of town where people did not know her." Within three or four hours after its birth, appellant took the child to her own home. She then lived, and does now, about twenty-five miles from the town of Oroville, where she has been farming land belonging to her mother and brothers. Some days later, appellant returned to Oroville to get something to show a right of adoption. The mother wrote and gave her the following:

"Oroville, Washington, November 23, 1910.
"I hereby turn over my right and title of my baby girl, born November 23, 1910, to Mrs. Nellie Myers, Riverside, Wash. E. N. Potter. Witness—Edith Hayes, R. H. Hayes."

From this time on, the foster mother has been the sole support of the child. She has cared for her as her own, according to the testimony of many neighbors and residents of that county. She has given her a good home, good clothing and good food, and is sincerely attached to it.

In July, 1913, she filed a petition with the court asking for a formal order of adoption. The statutory notice was given. Upon her petition, W. E. Grant, an attorney practicing at the bar of the court in Okanogan county, was appointed the next friend of the child. A trial was had. Many witnesses were called and examined. They were closely and severely cross-examined by Mr. Grant. The proofs were abundant to show that appellant has been a true mother; that she is able to care for, support and educate the child in keeping with its station in life. The proofs show that at no time has the mother ever concerned herself about her offspring, nor has she contributed in any way or in the slightest degree to its support. Her brother, who cared for her at the time of her confinement, testified to the good character of the appel-

lant; to her situation in life; to the condition of the little one, and expressed, in a most positive way, his belief that its interest would be best served by allowing appellant to adopt it. After the trial had been concluded, the judge *pro tempore* who tried the case directed that all papers and proceedings be served upon the mother, who had since married, but who at the time was not living with her husband. She was directed to appear at a certain time and show cause why an order of adoption should not be made. The mother did not appear as directed, but some time thereafter filed an answer or an objection. Neither the mother or the next friend made any appearance in this court. It is impossible for us to determine from the record the character of her appearance in the court below. Her answer is referred to in the brief of appellant, but we do not find it in the transcript. It is evident, however, that the court treated the objection as indicating that the mother did not intend to abandon her child; that if it appeared in a proceeding of this kind, at any stage, that a parent desired to keep the custody of his child, an order would not be made under the statute, which requires the consent of the parent in an adoption proceeding. Rem. & Bal. Code, § 1696 (P. C. 409 § 805).

It will be unnecessary to discuss the appellant's case further than to say that she has made out a case entitling her to the care and custody of the child, unless the objection filed by the mother is sufficient in itself to sustain the judgment of the lower court.

Reference to § 1696 of the code will show that the consent of a parent is not necessary where there has been an abandonment. The trial judge has fallen into error in this: He has treated the filing of the objection by the mother as a fact sufficient in itself, whereas, the question of abandonment should have been determined by reference to all of the facts in the case. When so measured, it is clear to us that the objection should not be allowed to overcome what we may

justly term the right of the foster parent and the right of the child.

Abandonment does not necessarily mean that a parent has no interest in a child's welfare. It means rather a withdrawal or neglect of parental duties. It means a withholding of care and protection, of sympathy and affection. When the subsequent conduct of the mother is considered in connection with her expressed dislike for the child and her desire that appellant get rid of it for her, and the giving of the writing which we have quoted, after sufficient time for the mother love to reassert itself, we have no hesitation in finding an abandonment. Then, again, this proceeding is instituted by the foster mother. The mother had not been interested to the slight extent of inquiring for the welfare of the child. We must presume that the situation and relation of the parties would have remained unchanged but for the fact that the mother was brought in by order of the court. It cannot be said that because a woman has given birth to a child she has a mother love for it. Mother love does not depend upon the pains and perils of childbirth. It is not every child that is welcome. On the other hand, there is an affection that grows from care and association and the tender ministrations which are prompted by a heartfelt sympathy for the weak and helpless. These beget a love as real as the love of a mother, and more, for the one who voluntarily assumes such a privilege must have far deeper maternal instincts than one who is an unwilling mother.

This court has frequently held, in considering cases of this kind, that we will make our first consideration the welfare of the child. It seems to the writer of this opinion that we would not be true to our own expressions if we were to hold that this child had not been abandoned by its parent.

In In re Fields, 56 Wash. 259, 105 Pac. 466, we held to the doctrine that abandonment was a question of intent; that intention was to be found at the time when a parent set in motion a set of circumstances which might and did culminate

in a relation of foster parenthood. After reviewing the facts and law, we there said:

"We are forced to the conviction that the fact was that the intention of the appellant when she took the child to the hospital was to abandon it, in the sense of relinquishing all claims that she had upon it, so that it might be legally disposed of by the authorities of the hospital."

See, also, *Winans v. Luppie*, 47 N. J. Eq. 302, 20 Atl. 969; *Nugent v. Powell*, 4 Wyo. 173, 33 Pac. 23, 62 Am. St. 17, 20 L. R. A. 199.

Furthermore, we are of the opinion that the writing made by the mother at the time the baby was turned over to appellant is a sufficient evidence of consent to an adoption. It will hardly be denied that, if the proceeding had been had immediately, the paper would have been sufficient, if authenticated and filed, as an exhibit in court.

"The dominant question is the moral, intellectual, and material welfare of the children. The wishes of the parent are subordinated to these considerations which, by all the courts, are deemed paramount." *Viereck v. Sullivan*, 77 Wash. 313, 137 Pac. 456.

This court gave great weight to a writing indicating the desire and purpose of a mother in *In re Wells*, 60 Wash. 518, 111 Pac. 778. In the one case the writing breathes a mother's love. In the other, a mother's indifference. Such expressions, whether the one or the other, are potent factors in controlling the discretion of a judge and satisfying him of the "fitness and propriety" of entering an order of adoption.

We hold that the mother abandoned her child at the time she gave it into the keeping of the appellant, and has since continued to abandon it; that the right of the foster mother is paramount to that of the parent, and that the interest of the child will be better served by an order of adoption.

If there were anything in the record to suggest that the objection made by the mother was well founded, or if there was any showing of conduct on her part that could be con-

strued as consistent with her present declarations, we would remand the case for a further hearing. There is not.

The judgment of the lower court will be reversed, with directions to enter an order of adoption.

MORRIS, C. J., and MOUNT, J., concur.

PARKER and HOLCOMB, JJ., concur in the result.