[Civil No. 3036.  Filed July 13, 1931.]

[1 Pac. (2d) 112.]

In the Matter of the Adoption of ESTHER JEAN CLARK, a Minor. VERNON W. EVANS and LILLIAN M. EVANS, Appellants, v. CHARLES R. CLARK, Appellee.

482

Mr. F. L. Zimmerman, for Appellants.

Mr. Henry H. Miller and Mr. Robert De Wolf, for Appellee.

ROSS, J.—This is an appeal by Vernon W. Evans and his wife Lillian M. Evans from an order denying their petition for the adoption of Esther Jean Clark, a minor child of the age of three years. The petition was resisted by Charles R. Clark, the father of the

child. The Evans reside in Phoenix, Maricopa county, Arizona, and at the time of filing petition, and for about eleven months continuously preceding, had the care and custody of Esther Jean. The father resided in California during all the times herein mentioned.

From the petition, the father's answer, and the transcript of the testimony, we gather this fact situation: When Esther Jean was about two and one-half years of age her mother died. Besides Esther Jean there were in the family, after her mother's death, her father and four children of a previous marriage. Mrs. Evans was visiting her sister, Mrs. Hattie B. Truax, who was a next door neighbor of the Clark's in Montrose, when Esther Jean's mother died, and with her sister bathed and dressed the child for the funeral service. This was in the month of March, 1929. Mrs. Evans again visited her sister in the months of July and August, 1929, and while there called on the Clarks, who had removed to Pasadena, and persuaded the father to allow her to have Esther Jean while visiting there and to bring her to Phoenix, with the promise that she would be returned in the spring of 1930. She was not returned at that time because of the prevalence of spinal meningitis in California.

Mrs. Evans and her sister, Mrs. Truax, both testified that the child was turned over to the former by the father with an agreement or understanding that if Mr. Evans later wanted to adopt her, they (the Evans) might do so. The father denied that he had ever agreed or consented to any such arrangement. There were introduced letters from both Mr. and Mrs. Evans, addressed to the father, clearly conveying the impression that they regarded their custody and care of Esther Jean as temporary. Under date of November 22, 1929, Mrs. Evans wrote a letter to the father in which she said:

"What I do for Esther is done because I love her and it sure hurt my feelings when you mentioned us charging for keeping her, and will love to keep her all winter and even after you take her she will always be welcome to come and visit us."

And again on November 30th:

"Wish you would let me know if she is going to stay all winter with me so I will know how to plan for her, there are things I want to make for her if she is going to stay the winter. Don't like to be kept upset, do not think that I am weaning her mind away from you for I talk of you every day to her. She says she loves her daddy but don't want to go to Pasadena."

And on November 30th she also wrote to Esther Jean's maternal grandfather as follows:

"Mr. Crosby, there was no arrangements made about Esther. I just brought her with me for the winter because I love her and want her to get a good strong start in life. Whatever I do for Esther I do for her mother's sake. I know what wonderful care she gave her before her death. My sister lived next door to them in Montrose, and has always had Esther with her so much, that is how I became attached to her, and I took care of her when her mother died, and she loves me so. Poor little dear, how I hate the thoughts of her having a stepmother for she is so loving and loves to have you love her and make over her. Mr. Evans and Esther are the greatest of friends. Mr. Clark said he was going to be married this spring and make a home for her and wanted her with him in his old age so he would not let me adopt her."

There is no question about the ability of the petitioners to care for the child. They are morally and financially able to do so. They own their home and are good honest people.

It appears that the father, Charles R. Clark, is a contractor and builder and a man of good habits, passionately devoted to his child. Owing to recent

financial losses he is at the present time in very straitened circumstances and has had difficulty in properly caring for his family. During the time that Esther Jean was with petitioners he wrote her frequent letters, and at Christmas time remembered her with little gifts. He also wrote often to the Evans inquiring about Esther Jean's health and happiness. His letters were always full of expressions of affection and love for the child.

The court denied the petition for adoption and committed the custody of the child to its maternal aunt, Mrs. Hattie Manyon. The petitioners have appealed, and complain of these orders.

Our adoption statutes, chapter 4, sections 117–126, Revised Code of 1928, make it the duty of the court in a proceeding of this kind to examine all persons appearing at the hearing, including the petitioners, the parent or parents, or, if they be dead or otherwise disqualified, the child's guardian, or next of kin, or next friend, also the child, if old enough. *In re Johnson's Estate,* 98 Cal. 531, 21 L. R. A. 380, 33 Pac. 460. And if therefrom, and from the reports of the probation officer and all other sources, the court is "satisfied that the interests of the child will be promoted by the adoption, [it] shall enter an order declaring that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting." Section 123, *supra.*

Pursuant to the language of this statute, we have held that the first and primary consideration is the welfare of the child. *Rizo* v. *Burruel,* 23 Ariz. 137, 19 A. L. R. 823, 202 Pac. 234; *In re Clough,* 28 Ariz. 204, 236 Pac. 700; 1 Corpus Juris, 1389, § 93.

We think there runs all through adoption statutes and also the decisions of the courts a disposition not to entirely ignore the natural rights of the parent. In *Rizo* v. *Burruel, supra,* we said:

"Notwithstanding this provision of the statute, we think the natural rights of the parent should not be lightly passed over; but, if the judge, after a careful investigation, comes to the conclusion that it would be better for the child and society for it to be taken from its natural parent and placed in the care of others, the statute [paragraph 1193, Civ. Code 1913] gives him that right."

If, however, after the trial court has made as thorough investigation of the situation and the parties as it is possible, and comes to the conclusion that the best interests of the child will not be promoted, and denies the petition, it would have to appear that his discretion was greatly abused before we would disturb his order.

"The parents are the natural guardians and cannot be deprived of their right to the care, custody, society and services of their children, except by a proceeding to which they are made parties, and in which it is shown that they are unfit or unwilling or unable to perform their parental duties. Every intendment should be in favor of the claim of the parent upon the evidence, and where the statute is open to construction and interpretation, it should be construed in support of the right of the natural parent." 1 Cal. Jur. 436, § 19.

In this kind of a case, as in all others, the credibility of witnesses and the weight of their testimony was for the trial court, and it is also the trial court's duty to reconcile any conflicts in the evidence, and its decision thereon is binding upon this court.

The matter of adoption rests strongly in the sound discretion of the trial court, and when it denies a petition to adopt its decision will not be disturbed on appeal without a showing of a very grave abuse of discretion. The denial of a petition by well-qualified petitioners is not such an abuse. *Matter of Bewley,* 167 Cal. 8, 138 Pac. 689; *In re Wells,* 60 Wash. 518, 111 Pac. 778.

We decline to disturb the order denying the adoption.

At the time of the hearing, the petitioners had the custody of Esther Jean with the permission and consent of her father. The father was her natural guardian and custodian, and, under the decision of the court, was entitled to have his child restored to him, or to the custody of some person of his choice, fit and proper and competent to care for her. The father, apparently realizing his inability to give to this little one the care and personal attention her tender years required, submitted his wife's sister Mrs. Hattie Manyon, the child's maternal aunt, as a proper and fit person to have her care and keeping. The court went into the question of the aunt's fitness and determined it was best for the child to be placed in her custody, and accordingly ordered her turned over to the aunt.

It is said the court had no jurisdiction or power to make this order. Whether it did or not, we are satisfied the petitioners have no right to complain. When the court denied their petition to adopt, that put an end to their cause of action and their rights, except the right of appeal therefrom. Perhaps, since the court failed to find that the father was not a fit and proper person to care for his child, the correct order would have been its restoration to the custody of its father. Whatever may be said of the order or its effect on the child, the petitioners' rights have not been affected in any way thereby.

We have examined the other assignments and the arguments in support of them, and fail to see wherein the petitioners have been harmed.

The order denying the petition for adoption is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.