**BARNES et al. v. PAANAKKER (two cases).**

Nos. 7337, 7338.

United States Court of Appeals for the
District of Columbia.

Decided March 11, 1940.

B. Woodruff Weaver, of Washington, D. C., and Wm. A. Gray, of Philadelphia, Pa., for appellants.

Geo. W. Dalzell, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

The appellants, Theodore, Barnes and his wife, Katherine Kolb Barnes, were petitioners in the District Court for the adoption of two male infants, Jean Jacques Paanakker and Peter Anthony Paanakker, children of Mrs. Barnes and Matthew B. A. Paanakker, her former husband, the appellee. Petitions were denied in each instance, from which orders of the District Court a consolidated appeal is here prosecuted.

At the outset, the right of this court to hear an appeal from adoption proceedings is challenged. In the District of Columbia, jurisdiction over adoption proceedings is vested in the District Court of the United States for the District of Columbia by § 1 of the Adoption Act.[1] The District Code (1929)[2] provides that "Any party aggrieved by any final order, judgment, or decree of the District Court of the United States for the District of Columbia, or any justice thereof, may appeal therefrom to the said court of appeals * * *". That this broad grant of appellate jurisdiction embraces an appeal by an aggrieved party from a final order in an adoption proceeding seems too clear for question.

However, it is argued that, despite the apparent breadth of its application, the general appeals statute is not to be so construed for the reason that an appeal is inconsistent with the nature of adoption proceedings. Although there is some slight sanction for this contention,[3] in

---

[1] D.C.Code Supp. V, Title 15, § 1a.

[2] D.C.Code (1929) Title 18, § 26.

[3] In Meyers v. Meyers, 32 Ill.App. 189, an intermediate appellate court held that an appeal would not lie from adoption proceedings, on the authority of an earlier decision of the Illinois Supreme Court in People ex rel. v. Gilbert, 115 Ill. 59, 3 N.E. 744. This latter decision held that an appeal would not lie from an order committing an insane person, because it would be contrary to the public interest to have lunatics at large. In Meyers v. Meyers, supra, adoption proceedings under the Illinois Act were described as "summary" in character. That description is not apposite to the type of proceedings authorized by our own Adoption Act.

Although the Meyers case has been followed in the Illinois courts, a rather full review may be had of a decree for adoption through the remedy of habeas corpus. Cf. People ex rel. O'Connor v. Cole, 238 Ill.App. 413; People ex rel. Baumgarten v. Kreuger, 253 Ill.App. 572.

many, if not most, states appellate jurisdiction is exercised over adoption proceedings through appeal,[4] writ of error,[5] or certiorari.[6] Moreover, we are of the opinion that the more persuasive authority takes the view that an appeal will lie, under a general appeals statute, from a final order or decree of a lower court entered in adoption proceedings.[7] A general appeals statute alone governs the appellate jurisdiction of this court over final orders or decrees of the District Court. In light of the breadth of the language contained therein, and the aforementioned authority, we must hold that an appeal will lie from such orders or decrees entered in adoption proceedings.

An understanding of the nature of these proceedings requires consideration of certain features of the Adoption Act and action taken pursuant thereto. Under § 1 of the Act, an administrative agency, the Board of Public Welfare, is required "to verify the allegations of the petition, to make a thorough investigation for the purpose of ascertaining if the adoptee is a proper subject for adoption and if the home of the petitioner is a suitable one for the adoptee and * * * report 'its findings with recommendations to the court".[8] The Board made an investigation pursuant to this section and reported favorably for the adoption. Section 2 of the Act, however, provides that "no decree of adoption shall be made unless the court shall find that the following persons have consented to the adoption: Adoptee, if fourteen or more years of age; and the natural parents * * * .if living."[9] The boys' father, Matthew B. A. Paanakker, refused to give an unconditional consent to the adoption. In certain circumstances, the act provides that the consent of a parent may be dispensed with.[10] One of these is "where investigation has shown to the satisfaction of the court extraordinary cause why such consent should be dispensed with". The petitioners sought under this exception to obviate the necessity for consent by the father to the adoption. The District Court found against them on this issue, however, and denied the petitions for adoption.

The petitioners contend that the sole question presented on this appeal is whether the District Court erred in failing to find the existence of "extraordinary cause" dispensing with the requirement that the father consent to the adoption. Since "extraordinary cause" must be established to the "satisfaction of the court" a broad measure of discretion is vested in

---

The Supreme Court of Oklahoma in the case of In re Hughes, 88 Okl. 257, 213 P. 79, in holding that an appeal would not lie from an order setting aside an adoption proceeding relied entirely on decisions of the Kansas and California Supreme Courts. In both of those jurisdictions, however, appeals from adoption proceedings were entertained prior to this decision of the Oklahoma court. Heydorf v. Cooper, 90 Kan. 511, 135 P. 578; In re Bewley, 167 Cal. 8, 138 P. 689. The status of In re Hughes, supra, as an authority on this question is, therefore, somewhat dubious.

[4] Matter of Bistany, 239 N.Y. 19, 145 N.E. 70; In re Bewley, 167 Cal. 8, 138 Pac. 689; State v. Schilb, Mo.App., 285 S.W. 748; Johnson v. Smith, 94 Ind. App. 619, 180 N.E. 188; In re Clark's Adoption, 38 Ariz. 481, 1 P.2d 112; Greene v. Willis, 47 R.I. 251, 132 A. 545 (by statute appeal is limited to the petitioner or the child by next friend). See, also, cases cited, infra, note 7.

[5] State ex rel. Thompson v. District Court, 75 Mont. 147, 242 P. 959; Cf. In re Mair, 61 N.D. 256, 237 N.W. 756, 757: "A suit in equity to set aside adoption, an application for a writ of habeas corpus or for a writ of error, and other remedies have been entertained by the courts to test the validity of adoption proceedings".

[6] Appeal of Weinbach, 316 Pa. 313, 175 A. 500, 501.

[7] Heydorf v. Cooper, 90 Kan. 511, 135 P. 578; Appeal of Cummings, 126 Me. 111, 136 A. 662. See Ferguson v. Herr, 64 Neb. 649, 94 N.W. 542, 544.

[8] D.C.Code, Supp. V, Title 15, § 1a.

[9] Id. § 1b.

[10] "The consent of a natural parent, or parents, or adoptive parents by a previous adoption, may be dispensed with (1) where after such notice as the court shall direct it shall appear to the court that such person or persons cannot be located; (2) where they have been permanently deprived of custody of the adoptee by court order; (3) where it shall appear to the court that they have abandoned the adoptee and voluntarily failed to contribute to his or her support for a period of at least one year next preceding the date of the filing of the petition; or (4) where investigation has shown to the satisfaction of the court extraordinary cause why such consent should be dispensed with." D.C.Code, Supp. V, Title 15, § 1b.

the District Court, and its decision on this issue may be disturbed only on a showing that there has been a grave abuse of this discretion.[11]

■ In our view of the case, however, we must decline to pass upon its ruling in respect to this matter since the record shows clearly that the District Court erred in certain matters of procedure sufficiently grave, in view of the nature of adoption, to require that the proceedings be remanded.

■ When the adoption of a child is sought, a decision ordering or denying the same affects the lives of the child, his natural parent, and his prospective adoptive parents. Rights of custody, control, and inheritance are affected. To say that a decision ordering or denying an adoption is fraught with deep and serious social significance is but to state the obvious. Despite its significance, older adoption statutes provided few procedural safeguards for the interests of the child whose adoption was sought. Even yet, in some jurisdictions, adoption may be had by deed and the consent of the natural parents is alone sufficient to alter the course of the child's life for better or for worse.[12] In 1937, following the lead of certain state legislatures,[13] Congress enacted the present Adoption Act, which has as its purpose the improvement of adoption proceedings in the District of Columbia. As previously pointed out, the act requires that the Board of Public Welfare investigate and report with its recommendations on petitions for adoption. Consent of the natural parents is required save in certain specified circumstances. But Congress did not deem these specific safeguards sufficient in all cases. The first section of the act which confers jurisdiction on the District Court over adoption proceedings also clothes the court "with authority to make such rules * * * as shall bring fully before the court for consideration the interests of the *adoptee,* the natural parents, the petitioner, and any other properly interested party".[14] (Italics supplied.) Under § 3 the court is authorized to enter a final decree for adoption only if satisfied " * * * (a) that adoptee is physically, mentally, and other-

wise suitable for adoption by the petitioner; (b) that the petitioner is fit and able to give the adoptee a proper home and education; and (c) that the change will be for the best interests of adoptee." [15] We are of the opinion that under these provisions it is mandatory that the District Court provide full protection for the interests of an adoptee. Measures appropriate will vary no doubt in different type situations. Had the District Court promulgated and applied rules in respect to this matter, review of the procedure followed in these proceedings would be limited to decision as to whether the rules were reasonably designed to accomplish their objective. No such rules have been adopted, however, and we must therefore consider in some detail the procedure followed in order to determine whether the adoptees' interests were fully before the court. Neither failure of counsel to raise the point on appeal, nor the fact that no decree of adoption was entered, relieves us of this responsibility, for decision on a petition for adoption may properly be made by the District Court only after it has brought the interests of the adoptee fully before it. Whether error in respect to this matter would render a decree of adoption vulnerable to collateral attack we do not here decide.[16]

We come then to the question—were the interests of the adoptees fully before the court in these proceedings?

■ At the time of these proceedings Jean Jacques Paanakker was fourteen years of age and Peter Anthony Paanakker was twelve. Neither appeared in person before the District Court. Their only testimony was given in depositions as witnesses for the appellee. We are of the opinion that where prospective adoptees have sufficient age and intelligence, as do these boys, to understand the character and consequences of adoption proceedings, they should appear for examination by the court in order that their interests be brought before it.

The wisdom of requiring examination of these adoptees seems obvious. In these proceedings the District Court took the

[11] In re Clark's Adoption, 38 Ariz. 481, 1 P.2d 112, 114; In re Bewley, 167 Cal. 8, 138 P. 689, 690; In re Wells, 60 Wash. 518, 111 P. 778, 779.

[12] See 1 Am.Jur. Adoption, §§ 26, 27, 28, 29. See, also, In re Camp, 94 Vt. 455, 111 A. 565.

[13] See Note, 26 Geo.L.J. 119.

[14] D.C.Code, Supp. V, Title 15, § 1a.

[15] Id. § 1c.

[16] Cf. Sewall v. Roberts, 115 Mass. 262; McConnell v. McConnell, 345 Ill. 70, 177 N.E. 692.

view that existence of "extraordinary cause", dispensing with the necessity of the appellee's consent to the adoption, depended on his character and relationship with the adoptees. Certainly, an examination of the latter by the court would have shed light on these issues as well as the effect of adoption on their best interests.

The full protection contemplated by the act for the interests of these adoptees would not have been afforded by such an examination alone, however. Their capacity for self-protection in these proceedings, though significant, is limited. For that full measure of representation and protection envisaged by the act, one legally capable of representing their interests must appear in the proceedings. Necessity for such representation is emphasized by the facts in these particular proceedings. The written consent of the fourteen year old boy was filed by the petitioners, but, when subpoenaed for a deposition as a witness for the appellee, he stated that he had signed the consent pursuant to the command of an officer at school without reading it. It appears from the record that the boys have never lived in the District of Columbia. In a private school at Laurel, Maryland, they are in the legal control and custody of the petitioners who actually live outside the District of Columbia. The jurisdiction of the District Court thus hangs by the slender thread of Theodore Barnes' claim to legal residence here.[17] In such a case, the court charged with the responsibility for deciding who shall be parents, must take the greatest precautions to assure full representation and protection for the interests of all concerned.

Did anyone legally capable of representing these prospective adoptees appear in these proceedings in the District Court? The natural parents and the Board of Public Welfare constitute the only possibilities. The natural mother of the boys whose adoption is sought, is one of the petitioners herein. Obviously, she cannot be expected to view these proceedings dispassionately or objectively. The boys' father, appellee here, is a naturalized Englishman, living in France. His opportunity for counsel with the boys, who are in the care and custody of the appellants in recent years, has been very limited. Moreover, a contract filed with the petition for adoption on its face seems to indicate that, for a financial consideration, partially executory, he undertook to consent conditionally to the adoption. (In the District Court, he stood upon the contract and refused to give an unequivocal consent to the adoption. One of the conditions in the contract, a right of visitation, was viewed by the District Court as inconsistent with the consent required by the act.) Under the record presented, the appellee cannot be regarded as an adequate protector of the interests of the adoptees in these proceedings.

Nor do we think that the act contemplates that the report of the Board of Public Welfare will, in all cases, satisfy the statutory requirements that the interests of the adoptee be fully before the court. The investigation authorized by the statute is limited in its subject matter, and, apparently, does not include investigation of the character of a natural parent not a petitioner, and no report was made in respect to this matter—a vital issue to these proceedings. Moreover, the authority given the District Court "to make such rules * * * as shall bring fully before the court for consideration the interests of the adoptee * * *" recognizes that protection in addition to that afforded the adoptee by the Board's report may be required in some cases. We think this is such a case.

We conclude that no one appeared in the proceedings legally qualified to represent the interests of the prospective adoptees in respect to the existence or non-existence of "extraordinary cause", the effect of adoption on their best interests, and other issues relevant to such proceedings. In his answer the appellee asked that a guardian ad litem be appointed for the

[17] Title 15, § 1a of the D.C.Code, Supp. V, provides in part as follows: "Jurisdiction is conferred if either of the following circumstances exist:

"(1) If petitioner is a legal resident of the District of Columbia;

"(2) If petitioner has actually resided in the District of Columbia for at least one year."

Barnes is a native of the District of Columbia but, as an officer in the United States Army, he has been stationed elsewhere on several occasions, as he now is. He testified that he is a legal resident of the District of Columbia and that he has never claimed residence elsewhere.

198

children. In the absence of a rule otherwise providing similar representation, the appointment should have been made.[18]

 Protection of adoptees and their interests is a dominant purpose of the Adoption Act and the court is charged thereunder with an affirmative duty to bring those interests fully before it, with authority to make rules to that end. In the instant proceedings the District Court failed to provide, by rule or otherwise, for examination of these adoptees and appointment of a qualified person to represent them. The interests of these adoptees were not, therefore, brought fully before the court. Decision that "extraordinary cause" did or did not exist, or decision on any other issue relevant to these proceedings, made before this obligation of the court with respect to the adoptees had been fulfilled, was improper and not predicated on the hearing contemplated by the statute. In order, therefore, that the District Court may perform its function under the Adoption Act, the proceedings must be remanded for further action consistent with this opinion.

Reversed and remanded.

---

[18] The Adoption Act in force prior to the enactment of the present law provided in part as follows: "If the child has no parent or guardian the judge shall appoint a guardian ad litem". D.C. Code (1929) Title 15, § 1.

Appointment of a guardian ad litem has by statute been the prescribed method for protecting the interests of infants in actions at law or in equity. D.C.Code (1929) Title 24, § 375. Rule 17 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides in part as follows: "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person". Although none of these provisions govern procedure in adoption proceedings under the present act (see Rule 81) they do serve to indicate that one acceptable method for protecting the interests of the adoptees in these proceedings would be the appointment of a guardian ad litem.