*In the Matter of the Welfare of* TERESA LYNN MAYPOLE, *a Minor.*

DONNA JEAN MAYPOLE, *Appellant,* v. WILLIAM ROBNETT *et al., Respondents.*

*Glenn W. Toomey* and *Rosellini & Rosellini,* for appellant.

*Phil Mahoney,* for respondents.

FARRIS, A.C.J.—Donna Jean Maypole is the natural mother of Teresa Lynn Maypole a/k/a Wilma Marie Robnett, born December 28, 1965. The appellant, a 15-year-old teenager when the child was conceived, was a 16-year-old unwed mother when the child was born. The record does not disclose the identity of the child's father. Six days after the birth, the appellant placed the child with her mother,

Mrs. Lillian Maypole, who then placed the child with a family acquaintance, Mrs. Hazel Robnett, who was married and living with her husband, William Robnett. The appellant was subsequently advised of the placement and executed a document which confirmed the act.[1]

Mr. Robnett did not know but suspected that Donna Jean Maypole was the mother of the child. He asked Mrs. Lillian Maypole directly if the child was Donna's daughter and Mrs. Maypole denied it. The record reflects that the child was not aware of her relationship to the Maypoles although her natural mother visited her some 15 times over a 3-year period. The visits were made when Donna Jean Maypole visited her mother who was a neighbor of the Robnetts.

The appellant became pregnant a second time and was married to that child's father, Mr. Rupert, on October 5, 1967. Some 18 months later, in April of 1969, she initiated an action for the return of her child. She was then involved in a divorce proceeding. The divorce was granted before the custody proceeding was concluded.

After the petition for custody was filed by Mrs. Rupert, the Robnetts petitioned for adoption of the child. The causes were consolidated for trial.

Error is assigned to the consolidation. In their answer to Mrs. Rupert's petition for custody, the Robnetts denied that the petitioner was the natural mother of the child and denied every other allegation of the petition. When the cause was called for trial, Mrs. Rupert moved for a judgment on the pleadings. The record indicates that the trial court, being advised that a petition for adoption had been filed by the Robnetts, denied the motion, struck the cause from the trial calendar, and consolidated it with the adoption proceedings.

■ Appellant has assigned error to this order of the trial court. The motion for judgment on the pleadings was

---

[1] "Baby girl born December 28, 1965 at 1:05 in the morning. She is in Mrs. Hazel Robnett's care. In case of emergency, Mrs. Robnett is to care for her as her own and make decisions regarding her welfare. If necessary for Mrs. Robnett to leave Washington, she may take Wilma with her. If she is gone for more than a month I wish to be notified of change of address of baby's resident [sic]. D. Maypole"

properly denied because there was a factual dispute.[2] *Pearson v. Vandermay,* 67 Wn.2d 222, 407 P.2d 143 (1965).

■ With respect to the portion of the order striking the cause from the trial calendar and consolidating it with the adoption proceedings, the record does not reflect any objections taken at the time of the entry of the order. Nor does the record indicate on its face that there were any irregularities or improprieties in the trial court's disposition of the matter. We cannot consider what is not in the record. *Falcone v. Perry,* 68 Wn.2d 909, 416 P.2d 690 (1966). The consolidation was an efficient method of handling the causes.

Mrs. Rupert did not consent to the adoption. RCW 26.32.040 provides in part:

> No consent for the adoption of a minor shall be required as follows:
>
> . . .
>
> (4) From a parent who has been found by a court of competent jurisdiction, upon notice as herein provided to such parent, to have deserted or abandoned such child under circumstances showing a wilful substantial lack of regard for parental obligations; . . .

Appellant argues that the findings of fact of the trial court do not meet the strict requirement of this statute and that in any event the record does not support a finding that the child was abandoned under circumstances showing a wilful substantial lack of regard for parental obligations.

■■ In *In re Adoption of Lybbert,* 75 Wn.2d 671, 674, 453 P.2d 650 (1969) the court considered RCW 26.32.040:

> The legislature, by this statute, defined abandonment on the part of a parent to have been established when the circumstances show a "wilful substantial lack of regard for parental obligations". What constitutes "parental obligations"? In construing statutory language the words must be given their usual, ordinary, commonly accepted and full meaning. *Parkhurst v. Everett,* 51 Wn.2d 292,

---

[2]Further, it has been noted that generally, "the welfare of innocent children, . . . is too important and too sacred to be disposed of by a judgment on the pleadings, . . ." *Joslin v. Joslin,* 45 Wn.2d 357, 366, 274 P.2d 847 (1954).

318 P.2d 327 (1957); *State v. Rinkes,* 49 Wn.2d 664, 306 P.2d 205 (1957). The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

It is the general rule that courts zealously guard the integrity of the natural relation of parent and child, and when severance of that relationship is sought because of violation of statutory mandates, such statutes must be strictly construed. *In re Lease,* 99 Wash. 413, 169 Pac. 816 (1918), and cases cited. The severance of the parental relationship is a highly important decision. However, this court has for many years adhered to the rule that the dominant consideration is the moral, intellectual and material welfare of the child or children, and that the parental relationship itself must be subordinate to these considerations. *In re Day,* 189 Wash. 368, 65 P.2d 1049 (1937); *In re Potter,* 85 Wash. 617, 149 Pac. 23 (1915).

We find that the holding in *In re Adoption of Lybbert, supra* fully applies to the facts in issue. Although Mrs. Rupert was a 16-year-old mother, a high school dropout without a job, her effort to discharge her parental obligations was substantially below her ability to perform.

The record here shows that the child was given to the Robnetts when she was but 6 days old. The Robnetts provided all parental guidance and influence and discharged the parental obligation to provide the child with the necessities of life with no assistance from her parents or grandparents. Visitation from the natural mother was infrequent and spasmodic without any revelation to the child that it was her mother who was visiting. The Robnetts also paid the sum of $225 towards hospital and doctor expenses incurred in the birth of the child.

The trial court correctly concluded that a natural mother, even with Mrs. Rupert's limited abilities, must do more than was done here to defeat a finding of willful substantial lack of regard for parental obligations.

There is substantial evidence in the record to support the trial court's finding of abandonment.

Affirmed.

JAMES and SWANSON, JJ., concur.

