[No. 1168-3.    Division Three.    January 30, 1975.]

In the Matter of the Adoption of ROCKY LEON DOBBS et al.
WILLIAM DEAN PEASE, Petitioner, v. LEO DOBBS,
Respondent.

G. William Baker (of Fortier & Baker), for petitioners.

Richard L. Phillips, for respondent.

GREEN, J.—William Dean Pease filed a petition to adopt his three minor stepchildren. The father, Leo Dobbs, declined to give his consent. Pursuant to RCW 26.32.050,[1]

---

[1] RCW 26.32.050 provides:

"If the court in an adoption proceeding, after a hearing for that purpose upon notice thereof as hereinafter provided having been given to a parent, finds any of the conditions set forth in RCW 26.32.040 to be a fact as to the parent, the court may decree that consent of such parent shall not be required prior to adoption."

petitioner moved the court to decree that the father's consent to the adoption was not required under RCW 26.32.040 (1) and (4).[2] After hearing, this motion was denied and petitioner appeals.

On appeal, it is contended the trial court erred in holding that (1) RCW 26.32.040(1) was not applicable; (2) the facts found and the evidence failed to establish the requisites of abandonment under RCW 26.32.040(4); and (3) the welfare of the children would be best served by not depriving Dobbs of his parental rights and by requiring his express consent to their adoption by petitioner. We need not consider the applicability of RCW 26.32.040(1), as reversal is required upon consideration of the other two assigned errors.

The findings of fact, not being challenged, are verities. CAROA 43. They show: Petitioner's wife and Dobbs were divorced in 1965 and the sole care, custody and control of their minor children was awarded to the mother subject to reasonable visitation by Dobbs who was ordered to pay a total of $150 per month child support. In 1966, the children's mother married petitioner and ever since that time the children have resided with and have been supported by them. Since 1965, Dobbs has paid negligible child support. With respect to the exercise of visitation rights, Dobbs visited the children several times (1) in a park near petitioner's home, (2) at the home of their aunt, and (3) at the home of a friend. On two or three occasions since 1965,

---

[2]RCW 26.32.040 (1) and (4) provide:

"No consent for the adoption of a minor shall be required as follows:

"(1) From a parent deprived of civil rights when in a hearing for that purpose, as provided in RCW 26.32.050, the court finds that the circumstances surrounding the loss of said parent's civil rights were of such a nature that the welfare of the child would be best served by a permanent deprivation of parental rights;

". . .

"(4) From a parent who has been found by a court of competent jurisdiction, upon notice as herein provided to such parent, to have deserted or abandoned such child under circumstances showing a wilful substantial lack of regard for parental obligations;"

Dobbs sent Christmas or birthday cards to the children. The court found that he has asserted love and affection for the children.

Dobbs' lack of child support and contact with the children was explained by his numerous incarcerations in jail or prison for misdemeanor or felony convictions resulting in his inability to maintain steady employment. His problems are summarized in the court's findings:

5.

Leo Dobbs is presently incarcerated in the Washington State Penitentiary, where he is serving time for having committed a felony, grand larceny, of which he was convicted in 1966, and for another felony, first degree forgery, of which he was convicted in 1972; prior thereto, he was convicted of a third felony, second degree burglary, in 1952, for which he also served time in the Washington State Penitentiary.

6.

Respondent Leo Dobbs has also been convicted of certain misdemeanors, the last of which occurred in 1973, and, since the parties were divorced in 1965, respondent Leo Dobbs has been incarcerated on numerous occasions.

. . .

11.

Leo Dobbs, since 1965, has had little or no ability to contribute to the support of the minor children, due to his numerous misdemeanor and felony convictions, and his inability to maintain, because of his criminal record, steady and gainful employment.

The court expressly found that the felony incarcerations "which continued to the present day, are as a result of his own willful and voluntary acts." (Finding of fact No. 7.) Additionally, "since 1965, [Dobbs] has shown little regard for his parental obligations concerning the minor children of the parties." (Finding of fact No. 12.)

Based upon these findings of fact, the court entered the following conclusions of law to which error has been assigned:

4. Leo Dobbs has not deserted or abandoned his minor children under circumstances showing a wilful substantial

lack of regard for his parental obligations, within the meaning of RCW 26.32.040(4).

5. The welfare of the minor children would be best served by not depriving Leo Dobbs of his parental rights in them and would be best served by requiring his express consent to their adoption by petitioner.

Petitioner contends that the evidence and the court's findings required the entry of opposite conclusions of law. More specifically, petitioner asserts that Dobbs' conduct discloses such a willful, substantial lack of regard for parental obligations as to constitute abandonment. We agree.

■ The general obligations of parenthood are found in *In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969), to include the following minimum attributes:

(1) [E]xpress love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

Here, it is undisputed in the evidence that Dobbs never supported the children or their mother during their marriage; rather, their source of support was public welfare. The court found negligible support for the children after the divorce. Dobbs claims that, during the 8 to 9 years between the divorce and the hearing in this case, he paid $300 support and gave some clothes to the children on one occasion; however, the mother claims she received only $30 support but concedes he gave an undefined amount of clothes to the children on Christmas, 1966. It is clear from the evidence and the trial court's finding of "negligible" support that Dobbs completely failed in his parental obligation of support. This failure becomes more apparent when viewed in the background of his testimony that he was incarcerated for about 5 years out of the intervening 9 years, *i.e.*, he was out of prison about 4 years, yet provided no support for his children.

■■ With respect to the other parental obligations outlined in *Lybbert*, it is evident from the trial court's findings

that Dobbs has fulfilled none of them. The court found his incarcerations to be the result of his own "willful and voluntary acts." Clearly, he was aware, at least after his first conviction in 1952, that repeated criminal acts would result in incarceration. Consequently, it was his choice as to whether (1) he would fulfill his parental obligations, or (2) commit criminal acts that would prevent him from doing so. He chose the latter option. Having done so, he cannot excuse the lack of performance of his parental duties on the basis of his frequent incarcerations.

While the courts zealously guard the integrity of the natural relation of parent and child, this necessity must be balanced against the dominant consideration of the welfare of the children. In *Lybbert*, at page 674, the court said:

> It is the general rule that courts zealously guard the integrity of the natural relation of parent and child, and when severance of that relationship is sought because of violation of statutory mandates, such statutes must be strictly construed. . . . The severance of the parental relationship is a highly important decision. *However, this court has for many years adhered to the rule that the dominant consideration is the moral, intellectual and material welfare of the child or children, and that the parental relationship itself must be subordinate to these considerations.*

(Italics ours.) In that case, which parallels some of the facts in the instant case, the court went on to say:

> With reference to the welfare of the children, the record establishes that from the time they were ages 4, 3 and 1 respectively until they were 13, 12, and 10, that they considered John R. Hansen as their father. They used the name Hansen in school, church, and the general community. Together with the two natural children of John and Lois Hansen they form a family unit. To change this existing status would disrupt and hamper the children's normal social development. Likewise, after such a long period of time, visitation by their natural father could now do nothing but upset and confuse them. Applying the established rule of law and weighing the interests of appellant against those of the children, giving the greater

emphasis to the latter, it is clear that the mere legal right of the parent must yield to the paramount interests of the children's welfare.

In the instant case, the children have resided with their stepfather and mother for 8 years, *i.e.*, since they were about ages 6, 5 and 2. At the time of the hearing, they were ages 14, 13 and 10. The children have used their stepfather's name in school and elsewhere. The stepfather has supported them and performed the general obligations of a natural parent. In contrast, their natural father has performed none of his parental obligations.

Consequently, it is our view that under the test of *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973), the conduct of the natural father evidences such a *"wilful substantial lack of regard for [his] parental obligations"* as to constitute in law an abandonment of his children. *In re Adoption of Lybbert, supra*; *In re Maypole*, 4 Wn. App. 672, 483 P.2d 878 (1971). As a consequence, the welfare of the children will best be served by not requiring their natural father's consent to adoption.

Reversed and remanded for further proceedings in accordance with this opinion.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied March 6, 1975.

Review denied by Supreme Court April 28, 1975.